Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

Tampa Division

| | | |
|---|---|---|
| Michelle Bernice Garvey | ) | Case No. 8:22 cv 2309 wFJ - AEP |
| | ) | _(to be filled in by the Clerk's Office)_ |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑Yes ☐No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| Martin J. Walsh, Secretary of Labor | ) | |
| United States Department of Labor | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.     The Parties to This Complaint**

**A.     The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Michelle Bernice Garvey |
| Street Address | 501 Knights Run Ave. Apt 1205 |
| City and County | Tampa, Hillsborough |
| State and Zip Code | Florida 33602 |
| Telephone Number | 8605597218 |
| E-mail Address | michelle.garvey@gmail.com or Garvey.michelle@dol.gov |

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

    Name                                           United States Department of Labor, Martin J. Walsh Secretary

    Job or Title *(if known)*

    Street Address                           200 Constitution Ave NW

    City and County

    State and Zip Code                 Washington DC 20210

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**C.     Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | USDOL, Wage and Hour Division |
| Street Address | 4200 W Cypress St., Suite 444 |
| City and County | Tampa, Hillsborough |
| State and Zip Code | Florida 33602 |
| Telephone Number | |

## II.     Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Other federal law *(specify the federal law)*:

☐     Relevant state law *(specify, if known)*:

☐     Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☑ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

Jan 29, 2020 thru June 2, 2020, February 25 and March 1 and March 9 and April 1, 2021 and continuing.

C.   I believe that defendant(s) *(check one)*:

- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race _____
- ☐ color _____
- ☑ gender/sex _____
- ☐ religion _____
- ☑ national origin _____
- ☑ age *(year of birth)* 1948 *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*
  bi-lateral Breast Cancer _____

E.   The facts of my case are as follows. Attach additional pages if needed.

Plaintiff is a 27-year Federal employee and has filed two separate but related employment discrimination claims against her employer/agency, USDOL, Wage and Hour Division, with the EEOC that have been accepted and investigated. More than 180 days from the filing of the formal complaints with the EEOC have passed without a final decision from the Agency on either case. 29 C.F.R. Section 1614.407.

Continued on Separate Sheet attached, titled Statement of Claim - Garvey v. US Department of Labor

Complaints filed with EEOC are also attached and marked as Exhibits A, B and C.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

June 2, 2020 and April 9, 2021 and 2/7/2022

B.      The Equal Employment Opportunity Commission *(check one)*:

     ✓   has not issued a Notice of Right to Sue letter.

     ☐   issued a Notice of Right to Sue letter, which I received on *(date)*

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

     ✓   60 days or more have elapsed.

     ☐   less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Back pay for period since reinstatement to prior held GS-14 position was denied and/or promotion was denied dating from January 29 2021 through the present and future period of employment. Either increase in 3 high retirement calculation for federal retirement calculation or equivalent payment that will result in no net loss to Plaintiff. Pain, suffering and other losses related to stress, exacerbation of physical condition, pain and suffering, loss of reputation, etc. All legal fees incurred though out EEOC and Federal court proceedings and other damages according to equity and law.

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        10/07/2022

Signature of Plaintiff      *Michelle B. Garvey*
Printed Name of Plaintiff    Michelle Bernice Garvey

### B.   For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

**Statement of Claim - Garvey v. US Department of Labor**

Plaintiff is a 27-year Federal employee and has filed two separate but related employment discrimination claims against her employer/agency, USDOL, Wage and Hour Division, with the EEOC that have been accepted and investigated.  More than 180 days from the filing of the formal complaints with the EEOC have passed without a final decision from the Agency on either case. 29 C.F.R. Section 1614.407

1. Plaintiff seeks damages as a result of discrimination by the agency due to non-selection, based on race, gender, disability and age discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17; Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; and Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117. and the Rehabilitation Act of 1973.  Complainant was further subjected to harassment, disparate treatment and retaliation for prior EEO activity by the Selectee who is now her supervisor and District Director (DD).

2. Complainant was significantly more educated, experienced and had previously held the exact same position in multiple offices for the agency while the Selectee and the other finalists were all significantly younger males with minimum qualifying education and virtually no management experience above Grade GS-13 and limited experience at the GS-13 level.  Selectee had reported to Plaintiff for 8 years of his 21 years as an Investigator in the Tampa Office.

3. Plaintiff, upon notice of the former Tampa DD's retirement, requested reinstatement to her former GS-14 position as a District Director in the Atlanta Region of USDOL W&H Division.  Plaintiff previously served at Columbia SC (7/2011 through 3/2014) and Connecticut and Rhode Island from 4/2014 through 8/2015 when she was diagnosed with bi-lateral Breast Cancer and requested placement in the only open management position in Tampa, a GS-13 Assistant District Director.

4. The Regional Administrator rejected this reinstatement request.  Although there is precedent for such placements in the Agency.  Plaintiff then applied for the position and went through the selection process and was one of 4 finalists.  The other three finalists were all male, significantly younger, less educated and experienced and had no permanent experience in a GS-14 position or District

**Statement of Claim - Garvey v. US Department of Labor**

5. Director position.   The selectee had reported to Plaintiff in the Tampa office for 8 years as an investigator.

6. Plaintiff was subsequently recruited and hired to run the Connecticut and Rhode Island offices of the W&H Division and was rated as either Outstanding (5 of 5) or Exceeds (4 of 5) in all rating periods during her entire history with the Agency.

7. Part of the initial EEO claim against the Agency was predicated on sexist comments made by the Selectee during the final interview which went unnoticed and uncorrected by the hiring and approving officials.

8. In April of 2021 the Selectee, now the District Director in the Tampa office, sent Plaintiff an email March 9, 2021 and alleged that Plaintiff had made a series of case assignment errors and indicated that if I made any further errors, it would be seen as failure to follow direct instruction I would be subject to disciplinary action. The DD lied in that email by alleging that the union representative was preparing to file specific charges against me and that he had talked the union out of it.  The Union Steward confirmed within hours (copy attached in Exhibit C) that the DDs allegation was not true and that he had never made such a threat.  This gave rise to a second EEOC Complaint that was also, following their investigation, accepted by OCR and submitted to the EEOC.

9. Upon investigation Complainant discovered that the other two managers in the office, one male and one female, both substantially younger had made the exact same assignment errors on multiple occasions over the preceding weeks and the District Director did not ever threaten, harass or warn those individuals which gave rise to the disparate treatment claim.

10. Though Plaintiff is still in her position as Assistant District Director in the Tampa District Office of Wage and Hour Division, she perceives that she is being subjected to a continuing environment of harassment and intimidation.

11. Plaintiff has attached the 3 EEO Formal complaints (2 Original) and (1 supplemental) as Exhibits A B and C as further detail.



**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

# Formal
### Complaint of Discrimination

*Note:* Complete, sign, and send this form in accordance with instructions from your EEO Counselor to Director, Civil Rights Center
*See back for additional information or for help in completing this form*

| 1. Name: Michelle B Garvey | 2. Agency: USDOL Wage and Hour Division |
| | Position Title/Grade: Assistant District Director / GS-13 |

| 3a. Home Address:<br>6012 Yeats Manor Dr, Unit 107<br>Tampa, FL 33616 | 3b. Office Address (if DOL employee):<br>4200 West Cypress St, Suite 444<br>Tampa FL 33607 |
| 4a. Telephone (including area code, extension):<br><br>Home/Cell: 860 559-7218<br><br>Office: 813 636-5102 / Cell 813 857-3927 | 4b. Email Address (CRC may contact you via email):<br><br>Home: michelle.garvey@gmail.com<br><br>Office: Garvey.michelle@dol.gov |

5. **Bases** (check as appropriate and specify where a blank is provided):

| _x Race: | _ Religion: | _x Sex (including pregnancy): |
|---|---|---|
| _ Color: | _x Age<br>(Date of Birth):01/05/1948 | _ Sex/Gender Identity/Transgender Status: |
| X_ National Origin: | _ Parental<br>Status: | _ Sex/Sex-Based Stereotyping/Sexual<br>Orientation: |
| _x Disability: | _ Genetic Information/<br>Services: | _ Reprisal (Please specify the prior EEO<br>activity and date): |

6. **Specify the action(s) that gave rise to this complaint** *(use the second page if needed):*

*Date(s)* Tuesday June 2, 2020          *Specific action(s)* Failure to reinstate/promote to former GS 14 position (see 2nd page)

7. **Please specify remedy(ies) you believe will resolve your complaint:** Placement in GS-14, step 8 positon in Tampa DO. (the grade and step I had already attained in August 2015 as a District Director, when I requested a temporary accommodation, for medical treatment, to be placed in an available GS-13 slot in the Tampa DO so that I might have the support of my family and physicians as I battled my cancer diagnosis). Alternatively To be paid at GS -14, step 8 (including all raises and time in grade increases) rate of pay including all credited time towards retirement for the remainder of my career with DOL.

| 8. Date Notice of Right to File a Complaint<br>of Discrimination was issued:<br>July 2, 2020 | 9. EEO Counselor's Name:<br>James Anderson/ Noel Cox | 10. EEO Counselor's<br>Telephone Number and Email Address:<br>Anderson.james.3@dol.gov 202-6936547<br>Cox.noel@bls.gov 202-691-7364 |
| 11. Have you filed a complaint on this same<br>matter with: | ☐ Administrative grievance system?<br>_ A union (specify name and date<br>_____)?<br>☐ Merit Systems Protection Board (MSPB)? | If yes, date(s) of other filing(s): |
| 12a. Representative's Name | 12b. Representative's Address: | 12c. Representative's Telephone<br>and Email Address: |

Date July 15, 2020          Signature *Michelle B. Garvey*

*CRC Use Only*   Date Received by CRC:          Issue:          Case Number:

CRC–1, Revised 03/15

*Exhibit A*
*Pg 1 of 4*

# Formal
Complaint of Discrimination

**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

# Formal
**Complaint of Discrimination**

**When can you file a formal complaint?**

When your EEO Counselor notifies you that your informal complaint cannot be resolved and provides you notice of your right to file a formal complaint, you have 15 calendar days from receiving that notice to complete, sign, and submit this form to the Director, Civil Rights Center (CRC) or to the Secretary of Labor.  Please note that the Secretary's office will forward the formal complaint to CRC, which may delay processing of your complaint.

**What happens next?**

Only allegations presented for EEO counseling will be considered for investigation at the formal stage.  *However, if you wish to amend your formal complaint* during processing with allegations "like or related to" issues you raised in your informal complaint, *you must* request an amendment by letter to the Director, Civil Rights Center.

**6. Continued. Use this space to continue #6 from the face of this form.**

*Date(s)*                                    *Specific action(s)*

On July 2, 2020, I was rejected for reinstatement and promotion to GS-14 District Director position in Tampa.  I believe I was not selected for the position due to discrimination based on my age, sex, race, disability and national origin as evidenced by the following:

1. When I learned that the former District Director had formally filed for retirement, I requested reinstatement to my former rank as a GS-14 Step 8 District Director in the Tampa District Office where I was currently located. Regional Administrator Juan Coria rejected my request, although he had the authority and there was precedent for it in the region and otherwise within the agency.  He stated that there were many "qualified" candidates interested in the position including other GS-14s. (In fact no other current or previous GS-14s applied for the position) This effectively told me he did not consider me "qualified" or he would have appointed me at that time. (See Exhibit 1, Coria email)  One has to ask why Juan Coria would think that any GS-13 who had never held the position of District Director or ever been promoted to any GS-14 position or any other upper level management position outside the agency would possibly be more qualified than one who, has successfully performed as a District Director for 5 years in two different Regions along with several other equivalent upper management positions in the private sector. It is clear his decision was based on his bias against people of my age, sex, national origin, race and disability and in favor of someone who is his similar age, similar national origin, race and free of disabilities. Interestingly the only two DD appointments Juan Coria has made are both Hispanic and younger, neither with any experience as a District Director.  Clearly his bias is for younger, Hispanic candidates.

2. I had served as District Director in the SE Region in the Columbia SC office from 2011 to 2014.  I then applied for and was selected as District Director of the CT/RI District Office in Hartford CT starting in April 2014.  I was diagnosed with Cancer in early 2015 and requested transfer to the only open management position in Tampa, a GS-13 ADD position, as an accommodation for medical treatment and to be with my family.  I worked 5 years in this GS-13 position from August 2015 through the present and asked for reinstatement at the first available opportunity as my disease was now in remission.

3. Juan Coria engaged in pre-selection activities as evidenced by his statement in the above noted email. (Exhibit 1) Additionally, he contacted another of the Tampa ADD's, Jim Rogers, and asked him why he wasn't applying as an encouragement to apply.  In the year plus that Juan Coria was Regional Administrator he had no contact with me either by phone or in writing while at the same time having several conversations with Jim Rogers and the selectee Nick Ratmiroff. His only direct communication with me was to refuse my request for reinstatement to the GS-14 position. It is clear that Juan Coria is biased against me from his actions by failing to interact with me as with other male managers.

4. In my 25 years with Wage and Hour I have never received performance ratings other than Outstanding or Highly Effective whether as an Investigator, Assistant District Director or District Director.  Additionally, I have never had any conduct issues throughout my career.  This is not true of the selected candidate who reported to me as an Investigator for 8 years in the Tampa office and had a serious conduct issue in his career and in fact was disciplined and considered for termination by the former District Director for falsifying Federal records.

5. When viewed objectively, my education, experience and performance both within the agency and my prior 20 years of management experience in both public and private sectors, the only possible explanation for choosing a candidate with less education, 8 years less management experience in Wage & Hour, performance and well known conduct issues can only be based on the bias of the selecting manager resulting in discrimination against me. (See Exhibit 2, Resume)  When hiring someone to do a job why would you hire someone who had no experience successfully doing the job, when another candidate had been highly successful and was selected and appointed to do the District Director job in two different regions within the agency unless the decision making was discriminatory based on the age, sex, national origin, race and disability of that other applicant?

6. In the final interview which was held as a virtual group interview with 4 candidates, myself and three younger males who had never held a DD position, being interviewed on Microsoft Teams.  Each candidate was asked the same questions in a round robin format and each candidate answered the exact same questions.  During the interview one candidate turned his camera off when it was his turn to answer a question (no comment from Coria) and the selected candidate answered a question about how he would handle a busy work day responding that he would "handle the step one grievance while lying in bed next to his wife".  Mr. Coria again failed to correct his selected candidate for making this obviously offensive, sexist and unprofessional comment.



CRC–1, Revised 03/15

**Formal**
Complaint of Discrimination



**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

**Formal**
Complaint of Discrimination

| | |
|---|---|
| <u>Definitions</u> | Individuals may file EEO complaints if they believe they have been subjected to discrimination because of their affiliation with the groups and/or statuses listed below. |
| Race | Equal employment opportunity cannot be denied any person because of his/her racial group or perceived racial group, his/her race-linked characteristics (e.g., hair texture, color, facial features) or because of his/her marriage to or association with someone of a particular race or color. Title VII of the Civil Rights Act of 1964 (Title VII) also prohibits discrimination in compensation and other terms, conditions, and privileges of employment based on stereotypes and assumptions about abilities, traits or the performance of individuals of certain racial groups. <u>Racial groups, for example:</u>  |

- American Indian or Alaska Native: A person having origins in any of the original peoples of North, South, or Central America and who maintains tribal affiliation or community attachment.
- Asian:  A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent. For example: Cambodia; China; India; Japan; Korea; Malaysia; Pakistan; the Philippine Islands; Thailand; and Vietnam.
- Black or African American:  A person having origins in any of the black racial groups of Africa.
- Native Hawaiian or other Pacific Islander:  A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands.
- White:  A person having origins in any of the original peoples of Europe, the Middle East or North Africa.

| | |
|---|---|
| Color | One's skin color or complexion. For example: light-skinned or light-complexion; dark-skinned or dark-complexion. |
| National Origin | An individual's (or his or her ancestor's) place of origin; or having the physical, cultural, or linguistic characteristics of a national origin group. For example: Egyptian; Iroquois Nation; and Hispanic.  (Hispanic, Latino, or Spanish origin refers to persons of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race.)  National origin discrimination means treating someone less favorably because he or she comes from a particular place, because of his or her ethnicity or accent or because it is believed that he or she has a particular ethnic background.  National origin discrimination also means treating someone less favorably at work because of marriage or other association with someone of a particular nationality.  Examples of violations covered under Title VII include employment decisions, harassment and actions regarding language, (especially accent discrimination) and English-only rules. |
| Religion | An individual's sincerely held religious practices and/or beliefs.  Examples: Baptist; Catholic; Hindu; Jewish; and Muslim.  Employers may not treat employees or applicants more or less favorably because of their religious beliefs or practices.  Employers must reasonably accommodate employees' sincerely held religious practices unless doing so would impose an undue hardship on the employer. |

<u>Pg 3 of 4</u>

**Age**              The Age Discrimination in Employment Act (ADEA) protects both job applicants and employees 40 years of age or older from employment discrimination based on age.

**Disability**       An individual with a disability is a person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment or is regarded as having such impairment. An employer is required to make a reasonable accommodation to the known disability of a qualified applicant or employee if it would not impose "undue hardship" on operation of the employer's business.

**Sex**              Title VII prohibits employment decisions on the basis of sex, which includes stereotypes and assumptions about abilities, traits, or the performance of individuals. Title VII also prohibits sexual harassment, which includes practices ranging from direct requests for sexual favors to workplace conditions that create a hostile environment for persons of either gender, including same sex harassment. Title VII also prohibits discrimination on the basis of pregnancy, childbirth and related medical conditions. The Equal Pay Act of 1963 requires that men and women be given equal pay for equal work in the same establishment. The jobs need not be identical, but they must be substantially equal. Discrimination against an individual because that person is transgender is discrimination because of sex in violation of Title VII. This is also known as gender identity discrimination. Additionally, lesbian, gay, and bisexual individuals may bring sex discrimination claims. These may include, for example, allegations of sexual harassment or other kinds of sex discrimination, such as adverse actions taken because of the person's non-conformance with sex-stereotypes.

**Sexual Orientation**   A person's enduring emotional, romantic or sexual attraction to another person without regard to the sex of that person, i.e. homosexuality, bisexuality or heterosexuality.

**Reprisal**         Civil rights laws prohibit reprisal for filing an EEO complaint, participating in the EEO process, opposing a discriminatory employment practice or requesting a reasonable accommodation based on religion or disability.

**Genetic Information**  Information about an individual's genetic tests; information about the genetic tests of an individual's family members; or information about occurrence of a disease, medical condition or disorder in family members of the individual.  Information about an individual's current health status (including information about sex, age, physical exams, and chemical, blood, or urine analyses) is not protected genetic information unless it contains information about an individual's genetic tests.

**Genetic Services**    Services, including genetic testing and counseling, provided to obtain, assess or interpret genetic information for diagnostic or therapeutic purposes, or for genetic education.

**Parental Status**     Status as a parent refers to the status of an individual who, with respect to an individual who is under the age of 18 or who is 18 or older but is incapable of self-care because of a physical or mental disability, is a: biological parent; adoptive parent; foster parent; stepparent; custodian of a legal ward; *in loco parentis* over such an individual; or actively seeking legal custody or adoption of such an individual.

**Formal**

CRC–1, Revised 03/15

**Complaint of Discrimination**

Pg 4 oF4



**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

# Formal
**Complaint of Discrimination**

*Note: Complete, sign, and send this form in accordance with instructions from your EEO Counselor to Director, Civil Rights Center*
*See back for additional information or for help in completing this form*

| | |
|---|---|
| **1. Name:** Michelle B Garvey | **2. Agency:** USDOL, Wage and Hour Division<br><br>**Position Title/Grade:** Assistant District Director GS13 |
| **3a. Home Address:**<br>501 Knights Run Ave, Apt 1205<br>Tampa, FL 33602 | **3b. Office Address (if DOL employee):**<br>4200 West Cypress St, RM 444<br>Tampa, FL 33607 |
| **4a. Telephone (including area code, extension):**<br><br>Home/Cell: **860-559-7218**<br><br>Office: **813-857-3927** | **4b. Email Address (CRC may contact you via email):**<br><br>Home: **michelle.garvey@gmail.com**<br><br>Office: **Garvey.michelle@dol.gov** |

**5. Bases** (check as appropriate and specify where a blank is provided):

| | | |
|---|---|---|
| ¨ Race: | ¨ Religion: | x¨ Sex (including pregnancy): |
| ¨ Color: | x¨ Age<br>(Date of Birth): | ¨ Sex/Gender Identity/Transgender Status: |
| x¨ National Origin: | ¨ Parental<br>Status: | ¨ Sex/Sex-Based Stereotyping/Sexual<br>Orientation: |
| x¨ Disability: | ¨ Genetic Information/<br>Services: | x¨ Reprisal (Please specify the prior EEO<br>activity and date): |

**6. Specify the action(s) that gave rise to this complaint** *(use the second page if needed)*:

*Date(s) March 9, 2021; February 25, 2021, February 26, 2021, April 1, 2021 Specific action(s)* On March 9, I was shocked when I received a threatening, intimidating and harassing email from DD Ratmiroff that was based on a lie alleging that the Union Steward, Al Hernandez, had contacted him and had threatened to file formal "charges" against me individually for not assigning a particular case that was in case inventory. Ratmiroff expanded his lie by stating that the Union claimed that I had assigned a "substantial number of cases contrary to my (Ratmiroff's) directions". (See email dated March 9, 8:36 am) Reading his email made me physically ill as I have never in my 40 plus year management career had a supervisor threaten and warn discipline against me for making a minor case assignment oversight. This became more egregious when researching the issue I found that two other younger managers had made the exact same assignment oversight on three earlier occasions over several prior weeks and were never corrected in any way. Ratmiroff attempted to make the minor oversight seem more serious by alleging Union involvement against me individually which was a complete fabrication.

**7. Please specify remedy(ies) you believe will resolve your complaint:**

| | | |
|---|---|---|
| **8. Date Notice of Right to File a Complaint**<br>of Discrimination was issued:<br>April 9, 2021 | **9. EEO Counselor's Name:**<br><br>Scott Kemp | **10. EEO Counselor's**<br>Telephone Number and Email Address:<br>202-860-6877    kemp.scott@dol.gov |
| **11. Have you filed a complaint on this same**<br>matter with:<br>No | Administrative grievance system?<br>A union (specify name and date<br>_____)?<br>¨ Merit Systems Protection Board (MSPB)? | If yes, date(s) of other filing(s): |
| **12a.  Representative's Name** | **12b.  Representative's Address:** | **12c.  Representative's Telephone**<br>and Email Address: |

| | |
|---|---|
| **Date** | **Signature** |
| ***CRC Use Only***    Date Received by CRC:    Issue: | Case Number: |

CRC–1, Revised 03/15

# Formal
**Complaint of Discrimination**

Exhibit B   pg 1 oF 12



**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

# Formal
**Complaint of Discrimination**

**When can you file a formal complaint?**

When your EEO Counselor notifies you that your informal complaint cannot be resolved and provides you notice of your right to file a formal complaint, you have 15 calendar days from receiving that notice to complete, sign, and submit this form to the Director, Civil Rights Center (CRC) or to the Secretary of Labor.  Please note that the Secretary's office will forward the formal complaint to CRC, which may delay processing of your complaint.

**What happens next?**

Only allegations presented for EEO counseling will be considered for investigation at the formal stage.  *However, if you wish to amend your formal complaint* during processing with allegations "like or related to" issues you raised in your informal complaint, *you must* request an amendment by letter to the Director, Civil Rights Center.

**6. Continued. Use this space to continue #6 from the face of this form.**

*Date(s)*                                    *Specific action(s)*

**March 9, 2021 continued:** After gathering myself, my initial reaction was to call the Union Steward Al Hernandez and check the facts. I came to discover that in fact I was not mentioned in either his written email to Ratmiroff (copy attached) or his subsequent phone conversation. Al Hernandez indicated he never mentioned me specifically to Ratmiroff, nor ever indicated he was going to file a formal grievance against me individually or the office at all and that he was just trying to head off what he thought might become a future issue regarding potentially "cherry picking" assignment of cases. In Ratmiroff's email of March 9 threatening discipline against me, he went on to allege that "I have managed to convince the union not to file formal charges against you and the office." Another blatant fabrication!  In my discussion with Mr. Hernandez I asked him if he had mentioned a concern with regard to me specifically or if he had threatened to file a union grievance against me individually.  Mr. Hernandez indicated emphatically that he had not. Additionally, he stated that the union was particularly concerned about the fact that there was one Investigator who had not been assigned any cases in weeks by another younger male manager in the office.  In fact he pointed out that this particular Investigator had only one case assigned for weeks when the requirement was that every investigator have 6 cases assigned at all times.  Additionally he stated this same manager had failed to assign cases for weeks when this same investigator had only 3 cases rather than the required 6 cases and yet Mr. Ratmiroff failed to address this with the other younger male manager and as Mr. Hernandez stated the union was concerned about "managers" cherry picking, i.e., failing to assign cases to investigators as required and not assigning more difficult cases to certain investigators.  The particular case the union was concerned about was registered on 2/17/21. Between 2/17/21 and 3/8/21 the other two younger managers had assigned a number of cases.  I had not needed to assign any cases to my investigators in that period.  However the younger male manager failed to assign this 2/17/21 case on 2 occasions between 2/17/21 and 3/8/21 and the younger female manager failed to assign this particular case once in the period.  (i.e., they assigned other cases and left this older registered case unassigned)  Yet Mr. Ratmiroff took no action nor did he threaten discipline against these younger managers.  In other words the case was available for assignment effective 2/17/21 and the union was concerned that some managers were passing over this perceived difficult case to assign less difficult ones to their investigators.  Additionally it is clear that Mr. Ratmiroff fabricated the union threatening to file a grievance against me personally.  Mr. Hernandez reported to me directly for more than 13 years and at no time have we had a single union issue in this office.  On the other hand Mr. Ratmiroff reported to me for 8 years and had a history of being less than honest and he was suspended and the former District Director wanted to fire him for falsifying his time records stating he was doing investigations when he was not.  This current fabrication that the union stated I was not following his procedures and going to file a grievance against me is yet another fabrication by Mr. Ratmiroff in order to discriminate against me as an older woman.

The issue of "cherry picking" was raised by Hernandez and repeated by Ratmiroff and in my original email response to Ratmiroff I indicated that I did fail to assign a particular case that was the subject of Al Hernandez complaint. My email goes into further detail but generally I missed assignment of an older case since as I was assigning cases on March 8 and 9 my database was sorted youngest to oldest rather than oldest to youngest and I didn't notice it. Yet Ratmiroff chose to attack me for this oversight and ignored the fact that the other two managers had failed to assign the same case on three separate occasions in the weeks prior as detailed in my email (attached). Ratmiroff used this assignment oversight as a pretext for alleging that I ignored his directives and warned me against making any other errors in the future, clearly targeting me based on my age, sex and national origin and treating me in a disparate fashion from the other managers. I found this shocking given that merely 5 months before I had received an outstanding rating in Tampa, a rating I have received for the vast majority of my 13 year DOL management career in Tampa Wage and Hour. Additionally, had I been "Cherry Picking", which connotes picking the easiest and less complex cases to advantage myself or my staff, why would my staff have been assigned 100% of the SCA Initiative, 100% of the Section 14 initiative, 56% of the Davis Bacon cases, 36% of the FMLA cases, the one H1B case in the office, and only 24% of the FLSA cases, which tend to be far less complex. There was no "cherry picking" being practiced by me.

**February 25 and March 1, 2021:** On Thursday February 25th there was a Tampa District Office training meeting during which WHI's Monique Perez and Vivian Williams raised concerns about a perceived lack of management support of WHI's generally regarding use of the 72 hour letter and the subpoena process. After the meeting WHI Perez wrote to DD Ratmiroff regarding her concerns and clarified that her complaints were not about her manager (myself) but were raised in support of another WHI and another manager. Following receipt of her email, DD Ratmiroff called WHI Perez demanding to know who the other manager was if it was not her manager. WHI Perez refused to identify the manager but a cursory review of the case that she was assigned to assist on in another unit would have provided the answer to his question. Subsequently, on February 26 DD Ratmiroff reached out by phone to WHI Williams and left a message that she should be specific regarding any problems she was having with ADD Garvey. WHI Williams responded to his message with an email specifically telling DD Ratmiroff that her complaints were not in regard to her manager but higher management. The emails to Ratmiroff from WHI Perez and WHI Williams dated February 25th and March 1 respectively are attached. I find the concept of DD Ratmiroff reaching out to two WHI's under my supervision to curry details of any complaints or problems they might have with me to be disturbing at the very least. My experience both within and outside Wage and Hour was that common practice and courtesy would have been to reach out to the manager initially if there was an operational concern. Clearly going to my subordinates directly indicates that DD Ratmiroff was more interested in looking for issues or oversights than some honest effort to improve operational performance. I attribute his action to several potential factors including retribution for my mentioning him in my ongoing Formal EEO Complaint against SE Regional management and his general bias and animus against me. He had clearly singled me out as he had not contacted other WHI's asking if they had problems with their managers.

**April 1, 2021:** DD Ratmiroff indicated by email he wanted to do mid-term reviews for each of the managers and asked that we call him via Teams. I spoke to him on Teams later that day, and as a result of that meeting I need to amend my complaint with an additional charge of harassment and intimidation as DD Ratmiroff's comments were out of place in the context of a performance review and was intended to be further harassment and intimidation. Considering the stress that his actions have caused me, I also want to amend my complaint to include protection for my disabilities.



When we connected on Teams he opened with initial comments that I was doing a good job and keeping my staff engaged but after the first sentence he went directly to comments about my email to him of March 9 and why his email to me was justified. This is the first time DD Ratmiroff chose to speak to me on this subject and I was shocked that he chose this setting. That he decided to lecture me about my complaint in the context of my performance appraisal was distressing, disconcerting and intimidating. He professed that he was "not after me" and that my perceptions were incorrect. His comments were focused on why he was correct in his email to me and gave no indication that he was backing off in any way. He effectively doubled down on his allegations that I had been in error and that I needed to make no further mistakes. He also did not address that the other managers had failed on three occasions to assign the exact same case in the weeks prior to my assignment of cases on March 8th and yet he did not correct the other managers (both younger, one male) in any way, let alone send them a threatening email as he did to me.

I feel his comments generally were inappropriate in the context of a performance review and that his intent was to justify his past actions and totally ignore that he lied about the union allegations as is evidenced in the email sent by the union. I also believe it was intended to intimidate me and serve as a warning of future performance evaluations. I believe the harassment of me is an effort on his part to force me to leave the agency. As he stated to me regarding another employee who has currently filed a formal discrimination charge against him, "I want her out of here one way or another."

**In Summary:**
This complaint has arisen from an overly aggressive manager who is engaging in reprisal and has an ageist, sexist, discriminatory bias against me. A manager who lies about union activity in order to make a minor case assignment oversight seem significant in an attempt to threaten discipline against me, when two other managers committed the exact same oversight and no issue was raised. A manager who would fabricate information within a federal agency official record in order to make an allegation that could not otherwise be made, and who claimed that "I have managed to convince the union not to file formal charges against you and the office", when no such threat was ever made. His actions have resulted in making even a remote work environment toxic and intimidating. I cannot imagine how toxic his actions would become in a normal office environment and his actions need to be stopped.

**Formal**
**Complaint of Discrimination**

Pg 3 of 12

 **U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

# Formal
**Complaint of Discrimination**

**Definitions** Individuals may file EEO complaints if they believe they have been subjected to discrimination because of their affiliation with the groups and/or statuses listed below.

**Race** Equal employment opportunity cannot be denied any person because of his/her racial group or perceived racial group, his/her race-linked characteristics (e.g., hair texture, color, facial features) or because of his/her marriage to or association with someone of a particular race or color. Title VII of the Civil Rights Act of 1964 (Title VII) also prohibits discrimination in compensation and other terms, conditions, and privileges of employment based on stereotypes and assumptions about abilities, traits or the performance of individuals of certain racial groups. Racial groups, for example:
- American Indian or Alaska Native: A person having origins in any of the original peoples of North, South, or Central America and who maintains tribal affiliation or community attachment.
- Asian: A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent. For example: Cambodia; China; India; Japan; Korea; Malaysia; Pakistan; the Philippine Islands; Thailand; and Vietnam.
- Black or African American: A person having origins in any of the black racial groups of Africa.
- Native Hawaiian or other Pacific Islander: A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands.
- White: A person having origins in any of the original peoples of Europe, the Middle East or North Africa.

**Color** One's skin color or complexion. For example: light-skinned or light-complexion; dark-skinned or dark-complexion.

**National Origin** An individual's (or his or her ancestor's) place of origin; or having the physical, cultural, or linguistic characteristics of a national origin group. For example: Egyptian; Iroquois Nation; and Hispanic. (Hispanic, Latino, or Spanish origin refers to persons of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race.) National origin discrimination means treating someone less favorably because he or she comes from a particular place, because of his or her ethnicity or accent or because it is believed that he or she has a particular ethnic background. National origin discrimination also means treating someone less favorably at work because of marriage or other association with someone of a particular nationality. Examples of violations covered under Title VII include employment decisions, harassment and actions regarding language, (especially accent discrimination) and English-only rules.

**Religion** An individual's sincerely held religious practices and/or beliefs. Examples: Baptist; Catholic; Hindu; Jewish; and Muslim. Employers may not treat employees or applicants more or less favorably because of their religious beliefs or practices. Employers must reasonably accommodate employees' sincerely held religious practices unless doing so would impose an undue hardship on the employer.

**Age** The Age Discrimination in Employment Act (ADEA) protects both job applicants and employees 40 years of age or older from employment discrimination based on age.

**Disability** An individual with a disability is a person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment or is regarded as having such impairment. An employer is required to make a reasonable accommodation to the known disability of a qualified applicant or employee if it would not impose "undue hardship" on operation of the employer's business.

**Sex** Title VII prohibits employment decisions on the basis of sex, which includes stereotypes and assumptions about abilities, traits, or the performance of individuals. Title VII also prohibits sexual harassment, which includes practices ranging from direct requests for sexual favors to workplace conditions that create a hostile environment for persons of either gender, including same sex harassment. Title VII also prohibits discrimination on the basis of pregnancy, childbirth and related medical conditions. The Equal Pay Act of 1963 requires that men and women be given equal pay for equal work in the same establishment. The jobs need not be identical, but they must be substantially equal. Discrimination against an individual because that person is transgender is discrimination because of sex in violation of Title VII. This is also known as gender identity discrimination. Additionally, lesbian, gay, and bisexual individuals may bring sex discrimination claims. These may include, for example, allegations of sexual harassment or other kinds of sex discrimination, such as adverse actions taken because of the person's non-conformance with sex-stereotypes.

**Sexual Orientation** A person's enduring emotional, romantic or sexual attraction to another person without regard to the sex of that person, i.e. homosexuality, bisexuality or heterosexuality.

**Reprisal** Civil rights laws prohibit reprisal for filing an EEO complaint, participating in the EEO process, opposing a discriminatory employment practice or requesting a reasonable accommodation based on religion or disability.

**Genetic Information** Information about an individual's genetic tests; information about the genetic tests of an individual's family members; or information about occurrence of a disease, medical condition or disorder in family members of the individual. Information about an individual's current health status (including information about sex, age, physical exams, and chemical, blood, or urine analyses) is not protected genetic information unless it contains information about an individual's genetic tests.

**Genetic Services** Services, including genetic testing and counseling, provided to obtain, assess or interpret genetic information for diagnostic or therapeutic purposes, or for genetic education.

**Parental Status** Status as a parent refers to the status of an individual who, with respect to an individual who is under the age of 18 or who is 18 or older but is incapable of self-care because of a physical or mental disability, is a: biological parent; adoptive parent; foster parent; stepparent; custodian of a legal ward; *in loco parentis* over such an individual; or actively seeking legal custody or adoption of such an individual.

# Formal
**Complaint of Discrimination**

CRC–1, Revised 03/15


Ps 4 oF 12

| | |
|---|---|
| **From:** | Coria, Juan G - WHD |
| **Sent:** | Wednesday, March 10, 2021 2:26 PM |
| **To:** | Garvey, Michelle B - WHD |
| **Subject:** | RE: Union Complaint about cherry-picking cases for your staff |
| | |
| **Categories:** | Red Category |

Michelle,

I am troubled to hear your allegations of harassment and/or retaliation.  Every employee of the Department has a right to a workplace free of harassment and retaliation. I take these allegations seriously, and have forwarded them to the appropriate parties so that they can be adequately addressed.  Should you have any other concerns of this nature, please do not hesitate to bring them to me, to any other DOL manager of your choosing, or to an OASAM-EEO representative.

**Juan Coria**
**Regional Administrator**
**Southeast Region**
**(404) 538-1463**

****WARNING****

The attached information may be confidential. It is intended only for the addressee(s), please note that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please destroy and/or permanently delete the information and notify the sender of the error.

**From:** Garvey, Michelle B - WHD <Garvey.Michelle@dol.gov>
**Sent:** Tuesday, March 09, 2021 4:51 PM
**To:** Ratmiroff, Nicolas - WHD <Ratmiroff.Nicolas@dol.gov>
**Cc:** Coria, Juan G - WHD <Coria.Juan@dol.gov>; McGriggs, Frank H - WHD <McGriggs.Frank@dol.gov>; Ali, Jehad - OASAM CRC <Ali.Jehad@dol.gov>
**Subject:** FW: Union Complaint about cherry-picking cases for your staff

Nick,
I do not appreciate the accusatory tone of your e-mail which I view to be purely retaliatory in nature.  You state that this is all related to a union allegation that managers have been cherry picking cases for assignment.  If cherry picking was the issue why would my staff have all the most difficult cases?  You indicate that the Union, Al Hernandez, had stated that I, Michelle Garvey, not the other managers, "have assigned a substantial number of cases contrary to my directions."  This is clearly a falsification on your part, as confirmed by the email from Al Hernandez, attached, and his verbal confirmation to me that he never said that in your phone conversation with him.

To be factual, I had assigned no cases to my staff for the period February 27 through March 8 and 9th.  All cases assigned between 2/3/21 and 2/26/21 were H2A, SCA, and DBRA priority cases.  As you know I worked a partial day on both Thursday and Friday March 4th and 5th.  So this alleged pattern of me ignoring your direction appears to be that I simply missed assigning a February 17th registered DBRA case yesterday morning and again today.  In a rush to keep staff at 6 assigned cases yesterday and today I did miss assigning older cases, since for some reason my registered cases list when I was assigning them were sorted by newest to oldest rather that the opposite.  I have corrected that sorting and will make assignment corrections. Mea Culpa, I did miss that case yesterday!  I'm sure no one on the management team


Ps 5 oF 12

including myself ever intentionally would violate any policy or procedure but I admit I am not perfect. From the typo and grammar errors in your email it's pretty clear you aren't perfect either.

However, on March 4th ADD Rogers assigned a clearly marked tier 2 FMLA case to Maureen Mitchell, who as you had pointed out had only 1 case under investigation as of today.   I am shocked that you chose to ignore that failure to assign according to your directives and chose to focus instead on me. In fact, ADD Rogers also failed to assign that same February 17 registered DBRA case on February 23rd when he assigned the Rat Pack Tier 1 Case rather than the clearly older February 17th registered DBRA case. Additionally, on February 25th ADD Huffer assigned the Kids Academy FLSA case rather than the DBRA case mentioned above. It seems there was reason for you to raise your issue with all managers and not go out of your way to try to falsify a case against me.  Your actions are unacceptable Nick. If you had wished to resolve any issues amicably and professionally to insure that the Office and team runs smoothly, I can't but wonder why you choose not to discuss the matter with me but instead sent an accusatory and harassing e-mail.

Your actions in this instance are both harassing and accusatory and based on a false premise. This combined with the fact that you recently contacted two of my direct staff, after they expressed a general complaint in a staff meeting, to encourage them to be specific with any complaints against me, even though they had already made clear to you that I was in fact not the subject of their complaints, both verbally and in writing. This is further evidence of your animus against me and the harassing environment you are creating.


Michelle B. Garvey
Assistant District Director
Tampa District Office
4200 W. Cypress St
Suite 444
Tampa, FL 33607
Tel/ Fax 813-636-5102


****WARNING****
The attached information may be confidential. It is intended only for the addressee(s) identified above. If you are not the addressee(s), or an employee or agent of the addressee(s), please note that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy and/or permanently delete the information and notify the sender of the error.

**From:** Ratmiroff, Nicolas - WHD <Ratmiroff.Nicolas@dol.gov>
**Sent:** Tuesday, March 09, 2021 8:36 AM
**To:** Garvey, Michelle B - WHD <Garvey.Michelle@dol.gov>
**Cc:** Ratmiroff, Nicolas - WHD <Ratmiroff.Nicolas@dol.gov>
**Subject:** Union Complaint about cherry-picking cases for your staff


Good Morning ADD Garvey;

As you may recall, in the past, we had a Union complaint claiming Managers were cherry picking complaints to their staff with the former director. As a solution, the DD began assigning cases instead of having the ADD do so.

As I explained when I became the Tampa office, DD that is not acceptable. All WHIs who are GS-12 must be able to do all the acts we enforce. Managers will not cherry pick cases for their investigators.



ps 6 of 12

As you may also recall,  I provided written guidance to all three ADD more than once directing that case assignments must be based on the age on the complaint and beginning with TIER 1 cases.  I made a temporary exception to the directive for AG cases and Directed DB cases.

On February 25, 2021 I provided an email will all the manager directing them to assign cases in a TIER I priority before any other work was assigned.

The list contained the following 4 cases

| | | | | | |
|---|---|---|---|---|---|
| 1 TAMPA | 1930860 | 01/05/2021 | TIER 1 | PricewaterhouseCoopers Advisory Services LLC |
| 2 TAMPA | 1933693 | 02/03/2021 | TIER 1 | Hillsborough Area Regional Transit Authority |
| 3 TAMPA | 1934794 | 02/17/2021 | TIER 1 | D.A.B. Constructors |
| 4 TAMPA | 1935299 | 02/23/2021 | TIER 1 | Rat Pack Worldwide Security and Consultant |

The Union brought up to my attention that you have assigned a substantial number of cases contrary to my directions.  (See attached excel sheet showing 7 cases assigned to your team members fail to assigned the TIER I case D.A.B or the Rat Pack.)

This is unacceptable.  I am not sure why this happened, but, it must stop immediately.

Effective immediately, follow my guidance provided on several instances giving the following priority to case assignments as stated November 12, 2020 and reiterated on February 23, 2021.

From this point forward all managers will assign work based on this policy.
1.-Geographical limit: From this point forward we will have three Geographical groups for assignment of both Complaint and Directed work. The guidance below should be applied based on those areas.
Tampa WHIs will be assigned cases in the following Counties: Citrus, Sumter, Hernando, Pasco, Hillsborough and Polk
Sarasota WHIs will be assigned cases in the following Counties: Manatee, Hardee, Highlands, Sarasota, Desoto, Glades, and Charlotte
Ft. Myers WHIs will be assigned cases in the following Counties: Lee, Hendry and Collier. Also, they can also be assigned cases in Charlotte and Glades as well.
2.- Before any directed case is assigned, the manager will begin by assigning a compliant case. (see item 8)
3.- Once all registered TIER 1 cases are assigned, the manager will begin (alternating Registered and directed cases in accordance with item 8 of this list) to assign complaint cases in FIFO (first in first out) order assigning the oldest registered case in inventory, then the next oldest, etc.
4.- If there are no registered cases in inventory, the manager needing to assign work, will review all the complaints in inventory to
determine if any of them should be TIER 1 complaints. If there are TIER 1 complaints, the manager will ask the support staff to register the case and assign it to your investigator needing work. (or register it yourself and assign it, either way is fine)
5.- If all registered complaints and TIER 1 complaints in inventory have been assigned, the manager will review the oldest complaint in inventory to see if it should be investigated.
6.- If the complaint should be investigated, ask the support staff register and assign the case to the WHI that needs work (or register it yourself and assign it, either way if fine).

To be clear,  this is not a recommendation but a directive.

Pg 7 oF 12

If you need to diverge from this policy, we must have a discussion from this point forward on the specific case assignment.
I have managed to convince the union not to file formal charges against you and the office.

However, if this occurs again I will consider it a failure to follow a direct instructions.
If you have not done so already, remove any assignment issued today to your staff If it does not follow this guidance and assign them the TIER 1 cases and the Directed Davis Bacon cases remaining to be assigned.

If you wish to respond, please provide the explanation in writing, then we can talk.

Respectfully;


**Nicolas Ratmiroff, District Director**
**U.S. Department of Labor , Wage and Hour Division**
**4200 W. Cypress St. Suite 444**
**Tampa, FL 33607**


U.S. Wage and Hour Division

**Office(813)636-5120**
**Cell(813)857-3864**
**Fax (813)636-5120**

****WARNING****
The attached information may be confidential. It is intended only for the addressee(s) identified above. If you are not the addressee(s), or an employee or agent of the addressee(s), please note that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy and/or permanently delete the information and notify the sender of the error.

pg 8 of 12

**From:** Hernandez, Jesus A - WHD
**Sent:** Tuesday, March 9, 2021 9:44 AM
**To:** Garvey, Michelle B - WHD
**Subject:** FW: Case assignments


**From:** Hernandez, Jesus A - WHD
**Sent:** Tuesday, March 09, 2021 7:16 AM
**To:** Ratmiroff, Nicolas - WHD <Ratmiroff.Nicolas@dol.gov>
**Subject:** Case assignments

Hello Nick,

You may remember that this issue came up with DD Schmidt.  It appears that the ADDs are cherry picking cases again when assigning to their investigators.  There is a Davis Bacon complaint from Feb 17 that did not get assigned, yet several newer FLSA cases were assigned.  Additionally, there is an FMLA case that wasn't assigned either.  Don't they have priority?

I am trying to pre-empt an issue because I would not be surprised that the person that gets the DB case is going to complain.  This exactly what happened last time with an SCA case.

I am available to speak if you need to.  I am not sure what the current policy is, but this does not seem equitable.

Al

pg 9 of 12

| | |
|---|---|
| **From:** | Perez, Monique - WHD |
| **Sent:** | Thursday, February 25, 2021 5:14 PM |
| **To:** | Ratmiroff, Nicolas - WHD |
| **Cc:** | Garvey, Michelle B - WHD |
| **Subject:** | clarification |

FYI my question today to you as the DD was not a reflection on my Manager but rather on another manager.  I have been helping another investigator with the case and I am shock as to the support and decisions that are being made by this Manager.  The employee is just afraid to speak up.  On the other hand,  we all need to know what support we have not just from our Manager but also from you and  above Management.

Thank you,

*Monique Perez*

Wage and Hour Investigator
Tampa District Office
(813) 857-3981

****WARNING****
The attached information may be confidential. It is intended only for the addressee(s) identified above. If you are not the addressee(s), or an employee or agent of the addressee(s), please note that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy and/or permanently delete the information and notify the sender of the error.

pg 10 of 12

| | |
|---|---|
| **From:** | Williams, Vivian - WHD |
| **Sent:** | Friday, March 5, 2021 6:48 AM |
| **To:** | Garvey, Michelle B - WHD |
| **Subject:** | FW: Response to 72-hour letter process |

This is the email I sent to Nick regarding the 72-hour letter.

**From:** Williams, Vivian - WHD <Williams.Vivian@dol.gov>
**Sent:** Monday, March 01, 2021 9:48 AM
**To:** Ratmiroff, Nicolas - WHD <Ratmiroff.Nicolas@dol.gov>
**Subject:** Response to 72-hour letter process

GM Nick,

I missed your call on Friday due to I was on leave starting at 12:00 Noon. In response to your message to be clear, My issue with the 72-hour letter and subpoena process is not with ADD Garvey. My issue is with the Region once my Manager has reviewed the case and the 72 hour letter is needed. The region states to use the process so a subpoena can be issued for non-compliant employers, but then it's not followed through by the Region. There seems to be some reason for them not to follow through on their part when the situation warrants. I feel if my manager has reviewed the case and it warrants a 72-hour letter and if this does not prompt the employer to comply then I am confused as to why the region doesn't support the subpoena process for that non-compliant employer. If we are going to advise the employer of this process, the region needs to be more consistent and show some solidarity as an agency so we don't have the look of disorganization by the employers and the workers we are trying to provide assistance.

Thanks

*Vivian Williams*
*Wage & Hour Investigator*
*Tampa District Office*
*(813) 636-5125 Direct/Fax*
*(813) 638-3707 Cell*

1


Pg 11 oF 12

| | |
|---|---|
| **From:** | Kemp, Scott B - OLMS |
| **Sent:** | Tuesday, May 11, 2021 10:49 AM |
| **To:** | Anderson, James - OASAM CRC |
| **Cc:** | Granby, Shaniqua - OASAM CRC |
| **Subject:** | FW: Garvey, Michelle - #IM21-04-072 Notice of Right to File a Formal Complaint |

Good Morning James,

All is well here in Nashville. I hope you all are well, also.

Another learning/reminder opportunity. I do not have a read receipt. I just updated my settings in my email so this will not happen in the future.

I do however have Ms. Garvey's "Out of Office" response from the NRTF I sent her.

Thank you,

Scott Kemp
Criminal Investigator
EEO Counselor

U.S. Department of Labor
(202) 860-6877 (cell)

Confidential E-mail Disclaimer

This electronic transmission may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, please notify me immediately by replying to this e-mail, and permanently delete the message. Use or disclosure of this information by non-intended recipients is strictly prohibited.

**From:** Garvey, Michelle B - WHD <Garvey.Michelle@dol.gov>
**Sent:** Friday, April 09, 2021 10:58 AM
**To:** Kemp, Scott B - OLMS <Kemp.Scott@dol.gov>
**Subject:** Automatic reply: Garvey, Michelle - #IM21-04-072 Notice of Right to File a Formal Complaint

I am out of the office and will be returning on 4/15/21.Please contact one of the other Tampa DO Managers if you require immediate assistance.



| EEO INVESTIGATIVE AFFIDAVIT (COMPLAINANT) | Page No. 1 | No. Pages 12 | Case No. DOL-21-04-062 |
|---|---|---|---|

| 1.  Affiant's Name (First, Middle, Last) **Michelle B Garvey** | 2.   Employing Facility **Wage and Hour Division** |
|---|---|

| 3.  Position Title **Assistant District Director** | 4.  Grade Level **GS-13** | 5.   Work Address and Zip + 4 **4200 West Cypress St Suite 444 Tampa, FL 33607** | 6.   Unit Assigned **Tampa DO** |
|---|---|---|---|

### Privacy Act Notice/Standards of Conduct

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which your Agency is a party or has an interest; to a government agency in order to obtain information relevant to your Agency decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with your Agency to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of your Agency finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for Investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Federal Agency employees, pursuant to 29 Code of Federal Regulations § 1614.108(c)(1) and (c)(3), are required to cooperate and shall produce such documentary and testimonial evidence as the investigator deems necessary.

### Important Information Regarding Your Complaint

This Form EEO Investigative Affidavit (Complainant), and the other form mentioned below, are being provided for you to use to fully respond to the accompanying questions. Mail or deliver your completed statement to the EEO complaints investigator within 15 calendar days of the date you received the forms. Remember to number the top of each page and sign and date the bottom of each page of your statement. If you return your statement by mail, the return envelope must be postmarked on or before the 15th calendar day after the date that you received the affidavit forms. | Failure to complete your statement and return the forms within the allotted time period could result in your complaint being dismissed based upon your failure to proceed. EEOC complaints processing regulation. 29 C.F.R. 1614.107(a)(7), states, in part, [A complaint may be dismissed] "Where the agency has provided the complainant with the written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt, or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal."

**This is a request for a Supplemental Affidavit based on your amended Claim #4. Please provide full meaning/definition for any acronyms used.**

1. **You have the right to be assisted by a representative of your choice when you complete this affidavit and at all times during the EEO process.** If you have selected a representative to assist you during this EEO process, please provide his/her contact information in include: full name, title, address, telephone number and email address. If you do not have a representative, please indicate that you have been advised of representation rights but have waived representation at this time.

   Response:  I have been advised of my right to representation but waive representation at this time.

2. Please state your full name, current personal mailing address, home telephone number, cellphone number (if any), and email address.

   Response: Michelle B. Garvey, 501 Knights Run Ave, Apt 1205, Tampa FL 33602, 860-559-7218, michelle.garvey@gmail.com.

3. Please state your position title, series and grade level, place of employment, work location (complete address), work email address, and work phone number.

| I declare under penalty of perjury that the foregoing is true and correct. | |
|---|---|
| Affiant's Signature  *Michelle B. Garvey* | Date Signed **2/7/22** |

Exhibit C     ps 1 oF 13

| EEO Investigative Affidavit *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 2 | 12 | DOL-21-04-062 |

Response: Assistant District Director; GS-13; USDOL Wage and Hour Division; Tampa District Office, 4200 West Cypress St Suite 444, Tampa, FL 33602; Garvey.michelle@dol.gov; (w) 813-636-5102 (m) 813-857-3927

4. If your position title or work location has changed since the alleged discrimination (October 2021), please indicate any other position title/work location you have been assigned to during this time period and the dates spent in the assignment.

Response: No changes.

5. Please identify your first line and second line supervisors by name, title, work email address, and work telephone number.

Response: 1st line Nicolas Ratmiroff, District Director, ratmiroff.nicolas@dol.gov , 813-636-5120, Cell Phone 813-857-3864
2nd Line Supervisor, Frank McGriggs, Deputy Regional Administrator, Mcgriggs.frank@dol.gov ,
Office 678-237-0506, Cell Phone 404-922-1936.

6. Was/is Frank McGriggs aware of your **sex**? If so, explain **when** (Month/Day/Year) and **how** you believe he became aware.

Response: Frank was aware of my sex, general age and that I was a white female from at least our first meeting in 2014 or 2015 if not earlier. Frank McGriggs stated in an earlier affidavit that he started in the Atlanta office in 2012. Since I was the District Director in South Carolina from 2011 until April 1, 2014 I may have met him shortly after his arrival in Atlanta but I normally dealt with Wayne Kotowski, DRA then RA.

7. Was/is Frank McGriggs aware of your **age**? If so, explain **when** (Month/Day/Year) and **how** you believe he became aware.

Response: Frank McGriggs was well aware of my age or at least that I was a member of a protected class due to my age from our first meeting. Additionally he has access to HR Connect which provides this information.

8. Was/is Frank McGriggs aware of your **national origin**? If so, explain **when** (Month/Day/Year) and **how** you believe he became aware.

Response: Frank McGriggs was aware that I was a white non-Hispanic female, if not specifically knowledgeable of my family background. Please refer to my original affidavit for further information.

9. Was/is Frank McGriggs aware of your **medical condition/impairment**? If so, explain **when** (Month/Day/Year) and **how** you believe he became aware.

Response: Frank would have become aware of my medical condition when I asked for a hardship transfer from my former District Director position in Hartford, CT to an open Assistant District Director position in Tampa in July or August 2015. As the direct supervisor of the Tampa District Office, Mr. McGriggs communicated my transfer request and medical condition to James Schmidt the then District Director in Tampa. It was reported to me that James Schmidt and Nicolas Ratmiroff were over-heard discussing my request and objecting to the transfer at that time. The transfer was approved over their objections. Please refer to my original affidavit for

| I declare under penalty of perjury that the foregoing is true and correct. | |
|---|---|
| Affiant's Signature *Michelle B. Garvey* | Date Signed 2/7/22 |

Pg 2 oF 13

| **EEO Investigative Affidavit** *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 3 | 12 | DOL-21-04-062 |

further information. I have also identified as a disabled person in the HR Connect system.

10. Was/is Frank McGriggs aware of your **prior EEO activity**? If so, explain **when** (Month/Day/Year) and **how** you believe he became aware.

Response:  As Deputy Regional Administrator, Frank McGriggs was well aware of and directly involved in the prior EEO actions I have filed against he and Regional Administrator Juan Coria in June 2020  and which is currently before an administrative judge and this EEO claim (DOL-21-04-062) which I filed against Nicolas Ratmiroff in March 2021.

**Claim 4:   On October 19, 2021, Complainant was aggrieved when she received a rating of Exceeds Fully Successful, rather than Outstanding, on her FY 2021 Performance Appraisal.**

Please thoroughly explain your version of events with respect to this claim. **Provide all relevant context, date(s), and all supporting documentation that is related to this claim.**

11. Who do you believe discriminated against you when on October 19, 2021, you received a rating of Exceeds Fully Successful on your Fiscal Year (FY) 2021 Performance Management Plan? Please provide full name(s), position title(s), current work telephone number(s), email address(es) and work location(s).

Response:  Nicolas Ratmiroff as the rating official and Frank McGriggs as the reviewing official.  Ratmiroff is my direct supervisor and McGriggs is my second line supervisor and their full contact information was provided in answer to question 5 above.

12. For **each** individual identified above, please state **how** they were involved.

Response: Ratmiroff as the rating official and McGriggs as the concurring/reviewing official.

13. Please identify the start and end dates of the FY 2021 Performance Management Plan.

Response:  October 1, 2020 through September 31, 2021

14. **When** (Month/Day/Year) and **how** were you notified of the rating?  If it was in writing, *please provide a copy of the notification*.

Response:  I was sent a signed copy of the Performance Appraisal by DD Ratmiroff on October 15, 2021 and it was discussed in a phone conversation between Ratmiroff and myself on Tuesday October 19, 2021.  I signed the Performance Appraisal and submitted it with comments on October 26, 2021.

15. How many Result Elements were you rated on?  Please identify **each** Result Element and the rating received for **each** one.

Response: I was rated on 7 Critical Elements and received ratings as follows:  1. Management Leading People 5 = Outstanding; 2. Resource Management 4 = Exceeds Fully Successful; 3. Quality 5 = Outstanding; 4. Productivity 5 = Outstanding; 5. Customer Service 4 = Exceeds Fully Successful; 6. Strategic Planning 5 = Outstanding; 7. Organizational Operations 5 = Outstanding.

| **I declare under penalty of perjury that the foregoing is true and correct.** |
|---|

| Affiant's Signature  *Michelle B. Garvey* | Date Signed  2/7/22 |
|---|---|

| **EEO Investigative Affidavit** *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 4 | 12 | DOL-21-04-062 |

16. What overall rating did you receive? *__Please provide a copy of the FY 2021 performance appraisal.__*

Response: Exceeds Fully Successful or rating 4 out of 5.  A total of 472 rating points.  475 points are required to be rated Outstanding.  The performance appraisal signed by myself, Ratmiroff and McGriggs is attached along with McGriggs November 5, 2021 email responding to my email and sending me the final Performance Appraisal with my comments attached.

17. Please identify the specific Result Element rating and/or lower evaluation that you disagreed with.

Response:  I was downgraded on Result Element 2, Resource Management.  Element 1 and 2 of the evaluation are the most heavily weighted and it is highly unlikely to receive an Outstanding overall rating without achieving an Outstanding rating on these first two elements based on the simple points total.

18. For **each** Result Element listed in response to Question #17, please explain **in detail** the reason why you disagreed with the rating. Provide specific examples of work performed during the rating period that you feel justifies a higher rating. *__Provide supporting documentation of work performed.__*

Response:  During the FY 2021 rating period I was assigned more staff (7) than either of the two other Tampa ADDs; was the only Tampa ADD who was assigned and ran a Cross Regional Initiative (Recreation), which included creating and conducting virtual training for all offices in the Region, meeting and conducting monthly, mid-year and year end reporting with the Region and planning for and conducting meetings with small teams in all 10 of the regional district offices throughout the year. Additionally, at my direction, my team completed 100% of the Sec. 14 cases, 100% of SCA cases, 59 % of the Food Services cases and 45% of DBRA Initiative cases in the Tampa DO.  With three Teams/Managers in the office you would expect there to be a 33% distribution of work between the teams, which clearly was not the case.  Additionally, with the exception of one or two, all significant and impactful cases released to the press from Tampa were from my teams' cases. With a new regional press coordinator, I spent significant time on each of these press releases reviewing and editing them for accuracy and impact. Seven of the ten cases published from Tampa in the final regional press releases were from my team. None of this activity would I consider "just doing the job" especially since other managers in Tampa did significantly less i.e.  Neither had 7 reports, nor did they conduct Region-wide training. All of the foregoing in my opinion deserved an outstanding Management of Resources rating. Years are different and as Managers we should be compared with the Standards set for our positions not some subjective comparison of what we didn't do in one year vs the next since every year is different and the opportunities are not always uniform.  I also testified in Administrative Hearings on one of my team's cases which resulted in all wages and penalties being awarded plus the Employer was debarred from further federal contract work. All of which took considerable additional time and extra effort while keeping up with an already heavier workload than other managers in the office.  No other managers in the office had to coordinate and testify in a litigation case completed in this period.

19. What overall rating do you believe that you should have received for the subject rating period? In your response, please explain **in detail** why you should have received the higher rating.

Response: Outstanding. See answer to question 17 above.  In 2020 I was rated as Outstanding on the Resource Management element and the only differences in 2021 according to Ratmiroff was that I did not do any hires in 2021, since there was no hiring in the office, and I did not participate in Basic 1 Training. The newest manager has never taught Basic I nor has Ratmiroff. However, I ran the only Cross Regional Initiative out of the Tampa office and as a result was required to develop and train all 10 regional offices on the detail and requirements and reporting for the initiative.  This was significantly more work than the Basic 1 training in prior periods and should have fully justified the higher rating.  In my view this lower rating was pure retaliation for

| **I declare under penalty of perjury that the foregoing is true and correct.** | |
|---|---|
| Affiant's Signature<br><br>*Michelle B. Garvey* | Date Signed<br><br>2/7/22 |

| **EEO Investigative Affidavit** *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 5 | 12 | DOL-21-04-062 |

prior EEO activity.

20. Did you have any discussions and/or conversations with the Rating Official about the rating? If yes, please describe the discussion(s), who was present during the discussion(s) and the specific date(s) of the discussion(s). ***Please provide a copy of any written communications.***

    Response:  The discussion with Ratmiroff occurred on October 19, 2021 and is described in my comments to my 2021 Performance Appraisal which is attached.

21. What were the reasons (if any) cited for your rating? ***If the communications were in writing, please provide a copy.***

    Response: The reasons for the rating were provided verbally in an hour-long phone conversation between Ratmiroff and myself on October 19, 2021.  For Element 2, Mr. Ratmiroff stated that since I did not do any hiring in the period it was impossible to rate me as outstanding.  When I pointed out that that if his statement were true that would make it impossible for any manager in Tampa, including himself, to receive an Outstanding rating on that element.  At that point he got defensive and started saying that he wasn't going to discuss others. I stated that I never asked about others ratings and wasn't asking about others, just stating the fact that based on his explanation of why I didn't receive outstanding on the Resource Management Standard no manager in our office could be Outstanding on that element since no one was hired in the office.  Mr. Ratmiroff also stated that he would not give me credit for the extraordinary amount of work I did in training all Regional Staff on the Recreation Cross Regional Initiative that I ran.  Ratmiroff stated that since he gave me that assignment, he could not consider it as outstanding since in his opinion anything assigned is just "doing the job" and could not contribute to outstanding performance.  This was the among the most non-sensical things I have ever heard. Another example provided by Ratmiroff was that if I had done a Roads Detail in another office that could have provided consideration for an Outstanding rating on Management of Resources. Again a non-sensical response since how does one excel at Managing Resources in your office per the standards when you are not there?  Since we were in the midst of a pandemic and all work was completed virtually that obviously wasn't possible in any case.

22. Did you disagree with these reasons? If yes, please explain **in detail** why you disagreed with the response. ***Please provide a copy of any disagreement submitted to the management official.***

    Response:  Yes, I strongly disagree with his reasoning.  It was clear to me that Ratmiroff was engaged in retaliation against me for filing the original EEO claim against him in April 2021 and the EEO Claim against Coria and McGriggs in 2020 that was in part based on the actions of Ratmiroff in the final interview for the Tampa District Director position that I was also a finalist for. Further detail is provided in answer to question 21 above.

23. **Prior to October 19, 2021**, did you have any discussions and/or conversations with the Rating Official about your performance level? If yes, please describe the discussion(s), who was present during the discussion(s) and the specific date(s) of the discussion(s). ***Please provide a copy of any written communications.***

    Response: On April 1 2021, a mid-year performance appraisal was held between DD Ratmiroff and myself. After opening comments that I was doing a good job, Ratmiroff' lectured me about my being wrong for filing an EEO complaint against him on March 19, 2021 based on an email to me on March 9, 2020 where he accused me of misassigning a particular case, threatened to discipline me and lied about receiving a threat from the union that they were going to file a grievance against me personally. He went on to lecture me as to why he was right in all respects stating that he had done nothing wrong.  It was very intimidating for him to lecture me about

| **I declare under penalty of perjury that the foregoing is true and correct.** |||
|---|---|---|
| Affiant's Signature<br><br>*Michelle B. Garvey* | | Date Signed<br><br>2/7/22 |

| EEO Investigative Affidavit *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 6 | 12 | DOL-21-04-062 |

my EEO complaint against him in the context of a mid-year performance appraisal.  It was my belief at that time that I would not receive a fair and objective final appraisal at year end 2021.

24. Did the evaluation process allow you to appeal your rating?  If yes, did you file an appeal?  If so, please state **when** (Month/Day/Year) and **how** you filed the appeal, and the **outcome** of your appeal.  If no, please explain why.  *Please provide a copy of your appeal.*

    Response: I am unaware of any appeal process for managers to appeal their appraisal and I have never found that necessary until the FY 2021 appraisal which I believe to be retaliatory on the part of Ratmiroff and McGriggs. In the Wage and Hour Division, however, all employees are allowed to write comments if they disagree with any or all of their rating.  I did write comments on my evaluation, for the first time in my 27-year career with Wage and Hour, and included those comments as a PDF entitled, PE Comments 2021.PDF, when I signed the Performance Appraisal on October 26, 2021 and sent it to Ratmiroff.  Frank McGriggs the Reviewing official subsequently responded to my Appraisal and comments by email dated November 5, 2021 and never bothered to call me or have a discussion regarding my concerns and my conversation with Ratmiroff.  Clearly McGriggs was more interested in "circling the wagons" to defend his new hire Ratmiroff than objectively looking at the failures of Ratmiroff's evaluation logic and, to continue his retaliation against me for filing an EEO claim against he and Juan Coria in 2020.  I have attached the signed Performance Appraisal, my comments thereto and the cover email from Frank McGriggs dated 11/5/2021 which included both of those documents.

25. Did you have any discussions and/or conversations with the Concurring/Reviewing Official about the rating? If yes, please describe the discussion(s), who was present during the discussion(s) and the specific date(s) of the discussion(s).  *Please provide a copy of any written communications.*

    Response:  There were no discussions with the Reviewing official, Frank McGriggs, see answer to Question 24 above. One would assume that an objective supervisor would be concerned when retaliation and inequity in the workplace is raised and would ordinarily wish to hear both sides of an issue and reach out to discuss with both parties. Clearly Frank McGriggs has no such interest.

26. Are there any witnesses who can support your version of events with respect to this claim? Identify each witness by name, title, work email address, and work telephone number.  Also, please provide a brief summary of what each witness could testify to if asked.

    Response:  There were no witnesses other than the participants, myself and Mr. Ratmiroff.

27. Please provide any further context, explanations, and documentation that would enable us to understand your position with respect to this claim.

    Response:  Under Resource Result I was downgraded from an outstanding rating in 2020 to Exceeds Fully Successful in 2021 in my view unfairly and based more on retaliation for filing an EEO claim rather than any lack of performance. My manager, DD Ratmiroff indicated that "your rating is based on the difference between last year and this year".  Rather than being compared to the Standards for my position he was using an inappropriate comparison with prior years.  He stated that "since I did not participate in any hiring in FY 2021 as I had in FY 2020, I could not be rated as Outstanding for this factor".  When I pointed out that logic would mean that no manager in Tampa could be considered for an Outstanding rating, he stated that he would not discuss the rating of other managers.  I stated that I was not asking about others and with 17 years of management experience as an ADD and DD, I knew full well that it was inappropriate to discuss the rating of others, but I did state that using his logic that not hiring in a period precluded an outstanding rating made no sense and would in effect eliminate an outstanding rating possibility for any manager in the Tampa office since no one did any

| **I declare under penalty of perjury that the foregoing is true and correct.** |
|---|

| Affiant's Signature | Date Signed |
|---|---|
| *Michelle B. Garvey* | 2/7/22 |

| **EEO Investigative Affidavit** *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 7 | 12 | DOL-21-04-062 |

hiring in the period. Ratmiroff's defensiveness on this subject confirmed to me that once again I was being subjected to unfair treatment, discrimination and retaliation. It is my belief that he did in fact rate another manager as outstanding on this particular element.

DD Ratmiroff went on to repeat that in Resource Management since there were no hires in the DO during this rating period that meant that I could not receive the same rating since in FY 2021 I was not able to participate in hiring or participate in Basic 1 as I had in FY 2020. When I explained the amount of extra training, etc., that I had to do in support of the Cross Regional Initiative he stated that "since he had assigned me that responsibility, regardless of how well I completed the task, in his view it was just part of my normal duties and therefore work completed as part of an assignment could not be considered Outstanding work in any regard". His statements made absolutely no sense and when I tried to question him further, he said "it's all in my writing" and refused to explain when asked how I could improve performance for next year, of course there was no reasoning or justification in his writing, just a recitation of tasks I had completed during the period.

During the FY 2021 rating period I was assigned more staff (7) than either of the two other Tampa ADDs; was the only Tampa ADD who was assigned and ran a Cross Regional Initiative (Recreation), which included creating and conducting virtual training for all offices in the Region, meeting and conducting monthly, mid-year and year end reporting with the Region and planning for and conducting meetings with small teams in all 10 of the regional district offices throughout the year. Additionally, at my direction, my team completed 100% of the Sec. 14 cases, 100% of SCA cases, 59 % of the Food Services cases and 45% of DBRA Initiative cases in the Tampa DO. Additionally, with the exception of one or two, all significant and impactful cases reported in press releases out of Tampa were from my teams' cases. With a new regional press coordinator, I spent significant time on each of these press releases reviewing and editing them for accuracy and impact. Seven of the ten cases published from Tampa in the final regional press releases were from my team. None of this activity would I consider "just doing the job" especially since other managers in Tampa were not required to do these things.

Years are different and as Managers we should be compared with the Standards set for our positions not some subjective comparison of what we did or didn't do in one year vs the next since every year is different and the opportunities are not always uniform.

28. Explain how you were harmed by the event(s) identified in this claim.

Response: I was harmed by not being fairly and objectively evaluated in violation of Merit Staffing Principles. I received a smaller year-end bonus than would have been paid had I received the outstanding rating. I was also subjected to disparate treatment when compared with other Managers in the District Office in terms of staff supervision and extra assignments. Finally, this process was in my view continuing although subtle harassment which has led to exacerbation of a preexisting auto immune condition and significant undue stress in my life.

29. Do you believe that management violated any Agency rules or regulations regarding this claim? If yes, please identify the rule and explain how it was violated. ***Provide any supporting documentation including a copy of any cited rules/regulations.***

Response: I believe that management violated Equal Opportunity, Harassing Conduct Policies and Merit Staffing principles that require equal, non-disparate and non-retaliatory treatment. Senior Management has allowed this harassment to continue and in fact escalate as evidenced by Ratmiroff recently ordering me to censor my language in a case review involving one of my staff, WHI Allen. This was a continuation of a series of emails where he wanted me to put all but one member of my all female staff on informal counseling and performance improvement plans based on his allegation of poor performance in the first quarter, 2022. The one staff member he omitted had announced her early retirement in January, 2022. After involvement of the

| **I declare under penalty of perjury that the foregoing is true and correct.** | |
|---|---|
| Affiant's Signature <br><br> *Michelle B. Garvey* | Date Signed <br><br> 2/7/22 |

Affidavit A

Pg 7 oF 13

| **EEO Investigative Affidavit** (*Continuation Sheet*) | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 8 | 12 | DOL-21-04-062 |

WECO staff, he was subsequently ordered to rescind his order. This just further demonstrates the continuing harassment and the seemingly never-ending attacks on me and my all-female staff. He has not issued any similar "orders" to either of the other managers. I have attached a series of emails from Ratmiroff and my responses dating from early January 2022 as further explanation of the issue. Again, Senior Management, McGriggs and Coria, have not reached out to me or done anything to eliminate the harassment though I assume they obviously were involved in ordering Ratmiroff to rescind his unethical order to me. Again no other Manager in the Tampa office has received such "orders".

30. Do you believe that any other rules, contract provisions or policies are applicable to your claim? If yes, please identify the rule and explain how it is applicable. ***Provide a copy of any supporting documentation***.

    Response: See answer and documents provided in answer to Question 29 above.

31. In addition to this EEO complaint, did you file any other appeals or a grievance with regard to Claim #4? ***Please provide a copy of the grievance and its status***.

    Response: No. I know of no other appeal or grievance rights that I might have. I have had discussion with the WECO office providing them information in support of their investigation.

32. Please explain why you believe that your **sex** was a factor with respect to this claim? Please provide any documents (including e-mails) that support your response.

    Response: At the time of the action I was a 73 year old white female. No other manager is being targeted and harassed by Ratmiroff.

33. Please explain why you believe that your **age** was a factor with respect to this claim? Please provide any documents (including e-mails) that support your response.

    Response: It is clear that I am considered the older female and not worthy in this Region and District Office.

34. Please explain why you believe that your **national origin** was a factor with respect to this claim? Please provide any documents (including e-mails) that support your response.

    Response: Two of my three supervisors are Latin males and they have made no bones about their preference for other Latins' including using the Spanish language as a reason to hire Ratmiroff even though it was not part of the job requirements of District Director in gross violation of Merit Staffing Principles.

35. Please explain why you believe that your **medical condition/impairment** was a factor with respect to this claim? Please provide any documents (including e-mails) that support your response.

    Response: My status as a cancer survivor has provided an excuse for W&H management to feel I am not up for the job.

36. Please explain why you believe that your **prior EEO activity** was a factor with respect to this claim? Please provide any documents (including e-mails) that support your response.

    Response: It is clear that Ratmiroff's action in March 2021 was partly in retaliation for bringing my initial EEO claim against McGriggs and Coria especially since a part of that claim was their failure to act in light of the

| **I declare under penalty of perjury that the foregoing is true and correct.** | | |
|---|---|---|
| Affiant's Signature<br><br>*Michelle B. Garvey* | | Date Signed<br><br>2/7/22 |

pg "8" of 13

| **EEO Investigative Affidavit** *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 9 | 12 | DOL-21-04-062 |

inappropriate actions of Ratmiroff during the final interview when in answer to a theoretical question of how he would handle a union grievance on a particularly busy day (a question that was asked of all four candidates) he chose to answer by saying "I would handle the grievance while laying in bed next to my wife", which I found to be a totally inappropriate, sexist and a hostile comment since I was the only woman in the interview with 5 men. Clearly McGriggs and Coria disagreed as they had no comment whatsoever and selected Ratmiroff to lead a predominately female staffed office.

37. Did you perceive the alleged actions as a form of hostile work environment? If yes, did you notify management of the same? Who did you notify, when (month/day/year), and what was management's response? Please explain. Identify the individuals by name, title, work email address, and work telephone number.

Response:  Yes.  Since the filing of my original EEO claim alleging discrimination by DRA Frank McGriggs and RA Juan Coria in 2020, Ratmiroff has taken any opportunity to target me and treat me significantly different than other managers and totally outside the bounds of professional behavior.  Notified June 2, 2020, March 19, 2021, October 26, 2021 and January, 25, 2022.

38. Are you comparing yourself to other Assistant District Directors under the same Management Officials (Rating and Reviewing Officials) who were treated **differently than/more favorably than you** in their FY 2021 Performance Appraisal? If so, please identify the Assistant District Director by 1.) Full name, 2.) Position title, 3.) Series and Grade Level, 4.) Sex, 5.) Age, 6.) National Origin, 7.) Your knowledge of their disability (Yes or No), 8.) Your knowledge of their prior EEO activity (Yes or No), 9.) Name and position title of Rating Official, 10.) Name and position title of Reviewing Official and 11.) Performance Appraisal rating in FY 2021. For **each** employee, please state **when** (Month/Day/ Year) this occurred and **how** you were treated differently. ***Provide supporting documentation of the difference in treatment.***

Response:  Though I never asked for any information about the other two managers in the Tampa District Office and I have no absolute knowledge regarding details of their performance appraisals in 2021, based on the defensive reaction of Ratmiroff during our 2021 Performance Appraisal discussion, when I commented that if I was being downgraded for not participating in hiring in 2021 as I had in 2020 and that since there was no hiring in the District Office in 2021, that would mean that no Manager including Ratmiroff himself could be rated as Outstanding on Resource Management.  When I made that comment, Ratmiroff reacted strongly that I could not make that assumption.  As a result of Ratmiroff's comment that I couldn't make that assumption, I believe that another manager or managers were rated as Outstanding on the Resource Management element in the 2021 rating period, which should have been impossible based on his logic used to downgrade me on that element. The two other managers in the Tampa District office are (1) Jimmy Rogers; Assistant District Director; GS-13; Male; 50's; Thai American; disability unknown; no; Nicolas Ratmiroff, District Director; Frank McGriggs, Deputy Regional Administrator; unknown and, (2) Donna Huffer; Assistant District Director; GS-13; Female; 50's; unknown; disability unknown; no; Nicolas Ratmiroff, District Director; Frank McGriggs, Deputy Regional Administrator; unknown.

39. Are you aware of any other Assistant District Directors under the same Management Officials (Rating and Reviewing Officials) who were treated **similarly to you** in their FY 2021 Performance Appraisal? If so, please identify the Assistant District Director by 1.) Full name, 2.) Position title, 3.) Series and Grade Level, 4.) Sex, 5.) Age, 6.) National Origin, 7.) Your knowledge of their disability (Yes or No), 8.) Your knowledge of their prior EEO activity (Yes or No), 9.) Name and position title of Rating Official, 10.) Name and position title of Reviewing Official and 11.) Performance Appraisal rating in FY 2021. For **each** employee, please state **when** (Month/Day/ Year) this occurred and **how** you were treated similarly to you.

| **I declare under penalty of perjury that the foregoing is true and correct.** | |
|---|---|
| Affiant's Signature<br><br>*Michelle B. Garvey* | Date Signed<br><br>2/7/22 |

Pg 9 of 13

| EEO Investigative Affidavit *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | **10** | **12** | **DOL-21-04-062** |

Response: No. That is the point. I have been targeted by Ratmiroff.

**Hostile Work Environment Allegations**

40. Did you or anyone acting on your behalf inform management that you were being subjected to a hostile work environment with regard to your FY 2021 Performance Appraisal? If so, for ***each*** occasion provide the following:

    a. On what date (Month/Day/Year) did you/they (please provide name/title/work email/ work phone number) inform management.

    b. Who [name/title/work email address/work phone number] did you/they inform?

    c. How [verbal or written] you/they informed management. ***If written, please provide a copy when submitting your completed Affidavit.***

    d. What response, if any, did you/they receive after informing management that you were being subjected to a hostile work environment, and who [name/title/work email/work phone number] provided the response. ***If written, please provide a copy when submitting your completed Affidavit.***

Response: On October, 26, 2021, I submitted written comments to management regarding the 2021 Performance Appraisal, I raised issues of discrimination and retaliation.

41. Did you or anyone acting on your behalf tell the alleged harasser or person that created the hostile work environment that you found his/her behavior unacceptable, unwelcome, and/or offensive with regard to your FY 2021 Performance Appraisal? If so, provide the following:

    a. Who did you/they tell? Identify name/title/work email address/work phone number.

    b. When (Month/Day/Year) did you/they tell them?

    c. What did you/they tell him/her?

    d. What was his/her response? ***If in writing, please provide a copy.***

Response: Not specifically as regards the 2021 Performance Appraisal but this has been an ongoing issue and the Harasser's direct supervisor, Frank McGriggs, DRA Atlanta Region has been advised on several occasions that I wanted his harassment to stop. Additionally in my e-mail of March 19, 2021 I stated that this harassing behavior needed to stop.

42. Did you ask that the alleged behavior stop? If not, please explain why.

Response: Yes. See answer to Question 41.

43. Was an investigation conducted into your allegations of harassment/hostile work environment with regard to your FY 2021 Performance Appraisal? If so, who conducted the investigation and when was it conducted? Provide name/title/work email address/work phone number.

Response: No.

44. If an investigation was conducted, were you advised of the outcome? If so, when, by whom and what was the outcome? ***If in writing, please provide a copy.***

| **I declare under penalty of perjury that the foregoing is true and correct.** |
|---|
| Affiant's Signature      *Michelle B. Garvey*      Date Signed    2/7/22 |

Pg 10 of 13

| EEO Investigative Affidavit *(Continuation Sheet)* | Page No. **11** | No. Pages **12** | Case No. **DOL-21-04-062** |
|---|---|---|---|

Response: No.

45. What, if any, effect did the harassment/hostile work environment have on your physical or emotional well-being? Describe in detail.

Response: Since this started I have been under significant stress, lost sleep, experienced flare-ups in an auto immune skin condition I have and generally felt significant stress in my work, in addition to the stress caused by covid and remote working arrangements.

46. What, if any, effect did the alleged harassment/hostile work environment have on your work performance? Describe in detail.

Response: I have worked hard to maintain my work standards, did not take significant time off work and generally feel I have continued to perform my job at the highest level.

47. Have you received training in harassment and/or a hostile work environment, and if so, when and what training did you receive? ***Provide supporting documentation, if applicable.***

Response: Workplace Sexual Harassment training was last completed on 6/23/2020 and DOL No Fear Act Training was last completed on 6/3/2021.

48. Are you familiar with the Agency's policy on anti-harassment/hostile work environment? Is the policy displayed for employees to view in your work area? If so, is the policy displayed in your office? Is the Policy available on LaborNet?

Response: Yes.

49. Was a grievance, appeal or other type of complaint filed with regard to your hostile work environment allegations with regard to your FY 2021 Performance Appraisal? If so, please identify the status and ***provide a copy of that documentation when submitting your Affidavit.***

Response: No grievance was filed but my comments were filed with my signed Performance Appraisal and my original EEO Complaint was modified to include the circumstances surrounding the April 1 and October 2021 performance appraisal process. As a manager I am not a member of a union.

50. Were there any witnesses who could testify that you were being subjected to a hostile work environment with regard to your FY 2021 Performance Appraisal? If so, identify each witness by full name, job title, work location, work phone number and work email address. Explain where the witnesses were in proximity to each incident and what he/she heard and/or saw. Provide a statement regarding what each witness heard and/or witnessed and/or could testify to if asked.

Response: There were no witnesses.

51. What remedy do you request to resolve the amended complaint?

Response: First that the continuing harassment should stop immediately. Second, remove Ratmiroff as my supervisor.

| **I declare under penalty of perjury that the foregoing is true and correct.** |||
|---|---|---|
| Affiant's Signature *Michelle B. Garvey* || Date Signed 2/7/22 |


PS 11 of 13

| **EEO Investigative Affidavit** *(Continuation Sheet)* | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 12 | 12 | DOL-21-04-062 |

52. Have you any other information you believe would be helpful in investigating this complaint?  If so, please provide additional testimony and documentation you believe to be relevant. If you provide documents, please explain why they are relevant.

Response:  I believe I have provided a good summary of the issues but would be happy to answer any specific questions.

*[If you mentioned any documents in answering your affidavit questions, please provide copies of those documents. If you are unable to provide copies of those documents, please explain why.]*

------------------------------------ **END OF STATEMENT** ------------------------------------

**REMINDERS:**

✓ Enter the total number of pages in the Block "No. Pages" at the top of each page.

✓ Sign and date at the bottom of each page.

✓ Do not staple your affidavit and/or accompanying documents.

✓ Do not write/type on the reverse of the Affidavit or accompanying documents.

✓ Complete the Form "Certification", by:

    ✓ Entering the number of pages of your affidavit, not including the Certification, &
    ✓ Sign & date in the Declaration Section at the bottom of the form.

✓ Please provide a copy of the requested documents.

| **I declare under penalty of perjury that the foregoing is true and correct.** | |
|---|---|
| Affiant's Signature *Michelle B. Garvey* | Date Signed 2/7/22 |

Pg 12 of 13

| **Certification** | Case No.<br>DOL-21-04-062 |

I have read the foregoing attached statement, consisting of _12___ pages, and it is true and complete to the best of my knowledge and belief.  In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

**Privacy Act Notice**

**Privacy Act Notice.** The collection of this information is authorized by The Equal Employment Opportunity Act of 1972, 42 U.S.C. 2000e-16; The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.633a; The Rehabilitation Act of 1973, as amended, 29 U.S.C. 794a; and Executive Order 11478, as amended.  This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program.  As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the Department of Labor is a party or has an interest; to a government agency in order to obtain information relevant to a Department of Labor decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the Department of Labor to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of Agency finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for Investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act.  Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Department of Labor employees and other witnesses.

**Declaration**

**I declare, under penalty of perjury, that the foregoing is true and correct.**

*(Affiant, sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

| Signature of Affiant | Date Signed |
| --- | --- |
| *Michelle B. Garvey*<br>Michelle B. Garvey | 2/7/22 |