## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MICHELLE BERNICE GARVEY,

      Plaintiff,

v.                                                          Case No: 8:22-cv-2309-WFJ-AEP

SECRETARY, UNITED STATES
DEPARTMENT OF LABOR,

      Defendant.

_____/

## ORDER

This matter comes before the Court on Defendant Secretary of Labor's Motion to Dismiss Plaintiff's Amended Complaint. Dkt. 25. Plaintiff Michelle Bernice Garvey, proceeding *pro se*, filed a response in opposition. Dkt. 26. Upon careful consideration, the Court grants Defendant's motion and dismisses Plaintiff's Amended Complaint without prejudice.

## BACKGROUND

On October 7, 2022, Plaintiff initiated this employment discrimination action against Defendant, her employer of 27 years. Dkt. 1 at 7. In her initial complaint, Plaintiff seemingly alleged that she suffered discrimination and harassment based on her sex/gender, race, national origin, age, and disability, as

well as retaliation based on her filing of administrative complaints with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 3−4, 7.

On January 4, 2023, Defendant moved to dismiss Plaintiff's initial complaint as a shotgun pleading due to Plaintiff's failure to separate her claims into distinct counts supported by distinct factual allegations. *See* Dkt. 11. The Court granted Defendant's motion but permitted Plaintiff to file an amended complaint that remedied the pleading deficiencies identified by the Court. Dkt. 19. Specifically, the Court instructed Plaintiff to "separate her causes of action into distinct counts" and "clearly identify the factual allegations supporting each count[.]" *Id.* at 5.

Plaintiff thereafter filed a nine-count Amended Complaint on March 1, 2023. Dkt. 22. In Count 1, Plaintiff alleges that she experienced "unlawful disparate treatment and/or hostile work environment based on age (DOB 1948), Sex (female), disability (cancer survivor), race (non-Hispanic [white]), and national origin" in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Rehabilitation Act of 1973 when "she was not reinstated to the position of District Director" on February 14, 2020. *Id.* at 2. In Count 2, Plaintiff similarly alleges "unlawful disparate treatment and/or hostile work environment" based on her age, sex, disability, race, and national origin in violation of Title VII, the ADEA, and the Rehabilitation Act when "she was not selected for the position of District

Director" on  June 2, 2020. *Id.* at 3. Count 3 alleges "constructive termination as a result of unlawful disparate treatment and/or a hostile work environment based on reprisal for prior EEO activity" in violation of Title VII, the ADEA, and the Rehabilitation Act "arising from the February 25 and 26, 2021 actions of Plaintiff's former supervisor who solicited complaints from two of Plaintiff's subordinates." *Id.* at 3−4. Count 4 is another claim for "constructive termination as a result of unlawful disparate treatment and/or a hostile work environment" based on Plaintiff's age, sex, disability, race, national origin, "and/or reprisal for prior EEOC activity" in relation to a threatening email sent by Plaintiff's supervisor on March 9, 2021. *Id.* at 4.

Turning to Count 5, Plaintiff alleges "constructive termination as a result of unlawful disparate treatment and/or a hostile work environment based on reprisal for prior EEOC activity" in violation of Title VII, the ADEA, and the Rehabilitation Act based on Plaintiff's former supervisor lecturing Plaintiff during a mid-term performance review on April 1, 2021. *Id.* at 4−5. In Count 6, Plaintiff asserts "constructive termination as a result of unlawful disparate treatment and/or a hostile work environment" based on her age, sex, disability, race, and national origin in violation of Title VII, the ADEA, and the Rehabilitation Act due to Plaintiff's receipt of a "downgraded" annual performance rating on October 19, 2021. *Id.* at 5. Similarly, Count 7 alleges "constructive termination as a result of

unlawful disparate treatment and/or a hostile work [environment]" based on her age, sex, disability, race, and national origin in violation of Title VII, the ADEA, and the Rehabilitation Act due to Plaintiff's receipt of another "downgraded" performance rating on October 13, 2022,[1] after Defendant became aware of Plaintiff's filing of the instant case in this Court. *Id.* at 5−6. In Count 8, Plaintiff brings a claim of "constructive termination as a result of unlawful disparate treatment and/or a hostile work environment" based on her age, sex, disability, race, and national origin in violation of Title VII, the ADEA, and the Rehabilitation Act following Plaintiff's supervisor demanding that Plaintiff shake his hand and pose for a photograph while accepting an award at a staff meeting on October 20, 2022. *Id.* at 6−7. Finally, Count 9 is another claim for "constructive termination as a result of unlawful disparate treatment and/or a hostile work environment" based on age, sex, disability, race, and national origin in violation of Title VII, the ADEA, and the Rehabilitation Act when Plaintiff's supervisor told her that refusing to shake his hand and pose for a photograph at the October 20, 2022, meeting was unacceptable. *Id.* at 7.

Defendant now moves to dismiss Plaintiff's Amended Complaint as another

---

[1] Though Count 7 alleges that Plaintiff received this annual performance rating on "October 13, **2021**," Dkt. 22 at 6 (emphasis added), Plaintiff appears to concede that this date is incorrect. Plaintiff instead received this annual performance rating on October 13, **2022**, roughly one week after she filed the instant lawsuit.

shotgun pleading, as well as for failure to exhaust administrative remedies and failure to state a claim for which relief can be granted. Dkt. 25.

## APPLICABLE LAW

### I.     Pleading Standards

Federal Rules of Civil Procedure 8(a) and 10(b) establish the minimum pleading requirements for a complaint. To satisfy Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must allege sufficient factual matter to state a claim that is plausible on its face to avoid dismissal under Rule 12(b)(6) for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, a complaint does not need detailed factual allegations but must contain more than an unadorned accusation. *Id.* In considering a Rule 12(b)(6) motion to dismiss, a complaint's factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

Pursuant to Rule 10, a plaintiff must also bring her claims in separate, numbered paragraphs, with each claim "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A complaint that violates this rule is often referred to as a shotgun pleading, which is a pleading that fails to give the defendant adequate notice of the claims against it. *Weiland v. Palm Beach Cnty.*

*Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Courts have little tolerance for shotgun pleadings, as they waste judicial resources, wreak havoc on appellate dockets, inexorably broaden discovery, and undermine respect for the courts. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (citations omitted). Dismissal of a shotgun pleading is warranted when "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1325 (emphasis in original).

## II.    Exhaustion of Administrative Remedies

Prior to bringing an action under Title VII, the ADEA, or the Rehabilitation Act, a federal employee must first exhaust her administrative remedies "by bringing her complaint before the EEOC and providing it with all of the information that it needs to investigate and resolve the dispute." *Holder v. Nicholson*, 287 F. App'x 784, 790 (11th Cir. 2008) (Title VII and ADEA); *see also Murphree v. Comm'r*, 644 F. App'x 962, 965 (11th Cir. 2016) (Title VII); *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (Title VII and Rehabilitation Act); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) (ADEA). "To successfully exhaust administrative remedies, the information that a claimant provides to the agency must 'enable the agency to determine what complaint of discrimination was made and when it had occurred.'" *Council v. Am. Fed'n of Gov't Emps. (AFGE) Union*, 477 F. App'x 648, 652 (11th Cir. 2012) (quoting

*Johnson v. Bergland*, 614 F.2d 415, 418 (5th Cir. 1980)). Significantly, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a *separate actionable* 'unlawful employment practice.'" *Id.* at 652 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)) (emphasis in original).

This exhaustion requirement exists because "the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). Accordingly, a plaintiff's discrimination claims in any subsequent lawsuit will be "limited by the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination." *Kelly v. Dun & Bradstreet, Inc.*, 557 F. App'x 896, 899 (11th Cir. 2014) (citing *Gregory*, 355 F.3d at 1280). This means that a plaintiff "may not raise '[a]llegations of new acts of discrimination' in the judicial proceedings." *Hillemann v. Univ. of Cent. Fla.*, 167 F. App'x 747, 749 (11th Cir. 2006) (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)); *see also Kelly*, 557 F. App'x at 899 ("[A]llegations of new acts of discrimination that are offered as the essential basis for requested judicial review are not appropriate absent prior EEOC consideration.").

However, because courts are "extremely reluctant to allow procedural technicalities to bar" discrimination claims, the scope of an EEOC complaint is not "strictly interpreted." *See Gregory*, 355 F.3d at 1280 (internal quotations omitted). *Kelly*, 557 F. App'x at 899. Rather, "[t]he proper inquiry is whether the complaint is like or related to, or grew out of, the allegations contained in the relevant charge." *Kelly*, 557 F. App'x at 899. In other words, "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint[.]" *Gregory*, 355 F.3d at 1279 (quoting *Wu*, 863 F.2d at 1547).

## DISCUSSION

In its present motion to dismiss, Defendant asserts that Plaintiff's Amended Complaint must be dismissed for three reasons. First, Defendant contends that the Amended Complaint is another shotgun pleading. *Id.* at 5. Second, Defendant avers that Plaintiff has failed to exhaust her administrative remedies as to several of her claims. *Id.* Finally, Defendant asserts that Plaintiff has failed to state claims for disparate treatment and hostile work environment under Title VII, the ADEA, and the Rehabilitation Act. *Id.* at 5−6. The Court considers Defendant's arguments in turn.

### I.    Shotgun Pleading

Despite Plaintiff's attempt to remedy her initial complaint's pleading deficiencies, Defendant contends that the Amended Complaint is still a shotgun

8

pleading. Dkt. 25 at 10. Specifically, Defendant notes that each of Plaintiff's counts encompasses multiple claims, thereby running afoul of Rule 10(b). *Id.* The Court agrees.

Each of Plaintiff's counts is brought under multiple statutes (Title VII, the ADEA, and the Rehabilitation Act) and presents multiple theories of recovery (disparate treatment, hostile work environment, retaliation, and/or constructive termination). *See* Dkt. 22 at 2−7. This is quintessential shotgun pleading. *See Weiland*, 792 F.3d at 1322−23. Claims brought pursuant to Title VII, the ADEA, and the Rehabilitation Act must be pled separately. *See Hausberg v. Wilkie*, No. 8:20-cv-2300-TPB-JSS, 2021 WL 4133739, at *2 (M.D. Fla. Sept. 10, 2021) (collecting cases). Moreover, "if [a] plaintiff is alleging hostile work environment, disparate treatment, wrongful termination, or unlawful retaliatory discharge, each of those distinct legal claims or legal theories requires a separate count." *Williams v. Perry Slingsby Sys. Inc. Technip Grp.*, No. 08-81076, 2008 WL 11333634, at *2 (S.D. Fla. Oct. 15, 2008).

Plaintiff's failure to separate her claims into distinct counts makes it "virtually impossible" to decipher her claims. *See Weiland*, 792 F.3d at 1325. For this reason alone, Plaintiff's Amended Complaint is due to be dismissed in its entirety. While Defendant seeks dismissal with prejudice, *see* Dkt. 25 at 12−13, the Court will permit Plaintiff one final chance to properly plead her claims. Plaintiff

9

must separate her causes of action into distinct counts, each of which must be limited as far as possible to a single set of factual circumstances. *See* Fed. R. Civ. P. 10(b).

## II.   Administrative Exhaustion

Defendant also asserts that several of Plaintiff's counts must be dismissed because they assert claims that have not been administratively exhausted. Dkt. 25 at 13. Defendant notes that Counts 7, 8, and 9, as well as the constructive termination claims in Counts 3 through 9, are based on incidents alleged to have taken place in mid-October 2022 and late December 2022. *Id.* at 14. Specifically, Count 7 relates to Plaintiff's performance review on October 13, 2022, and Counts 8 and 9 pertain to her supervisor's conduct during and after a staff meeting on October 20, 2022. Dkt. 22 at 5−7. The constructive termination claims in Counts 3 through 9 are based Plaintiff's resignation on December 31, 2022. *Id.* at 3−7; Dkt. 26 at 10. Given that these incidents occurred after Plaintiff initiated this action on October 7, 2022, Defendant avers that there is no indication that any of these claims have been administratively exhausted. Dkt. 25 at 14−17.

In response, Plaintiff avers that the mid-October 2022 incidents are "simply additional examples of the continuing pattern of retaliation" of which she had complained to the EEOC. Dkt. 26 at 17. Concerning her constructive termination claims, Plaintiff contends that it is "unreasonable" to require her to bring yet

10

another claim to the EEOC, as this "would set up a circular system that prevent Plaintiff from ever reaching a jury." *Id.* at 18. Both of Plaintiff's arguments are unavailing.

In her administrative complaints with the EEOC, Plaintiff alleged discrimination, harassment, and/or retaliation based on the following six incidents: (1) Plaintiff's non-selection for a District Director position in 2020; (2) sexist comments made in a group interview for the District Director position in 2020; (3) the February 2021 solicitation of complaints about Plaintiff by the individual selected for the District Director position (the "Selectee"); (4) Plaintiff's receipt of "false and threatening" emails from the Selectee on two dates in March and April 2021; (5) the Selectee's lecturing of Plaintiff about the March 2021 email exchange during her mid-term review in April 2021; and (6) Plaintiff's receipt of an "Exceeds Fully Successful" rating instead of an "Outstanding" rating on her annual performance review in October 2021. Dkt. 1 at 9−15.

Given that Plaintiff's two administrative complaints were filed with the EEOC *before* she initiated this action on October 7, 2022, it is undisputed that neither administrative complaint makes any mention of the Plaintiff's performance review on October 13, 2022 (Count 7), Plaintiff's supervisor's conduct on October 20, 2022 (Counts 8 and 9), or Plaintiff's resignation on December 31, 2022 (Counts 3 through 9). Contrary to Plaintiff's assertion, these allegations are not

merely continuations of the conduct mentioned in her administrative complaints. Rather, they are discrete acts that must be administratively exhausted. *See Council*, 477 F. App'x at 652; *see also Ellison v. Brennan*, No. 3:19-cv-726-J-34PDB, 2020 WL 2523287, at *7 (M.D. Fla. May 18, 2020) (plaintiff's suspension occurring after filing of EEOC complaint was a discrete act that had not been administratively exhausted).

Absent any evidence that Plaintiff attempted to raise these incidents during the administrative process, the Court cannot find that she made a "good-faith effort to comply with the pertinent regulations and timely seek administrative remedies" as to these newly alleged claims. *See Rueda-Rojas v. United States*, 477 F. App'x 636, 638 (11th Cir. 2012). To find otherwise would undermine the purpose of administrative exhaustion. *See Francois v. Miami Dade Cnty., Port of Miami*, 432 F. App'x 819, 822 (11th Cir. 2011).

For these reasons, Plaintiff's claims stemming from her performance review on October 13, 2022, her supervisor's conduct on October 20, 2022, and her resignation on December 31, 2022, are barred. Her claims before this Court must be limited to what has been administratively exhausted, which are the aforementioned allegations made in her two administrative complaints with the EEOC. Counts 7, 8, 9, and the constructive termination claims asserted in Counts 3 through 9, are therefore dismissed.

12

### III.    Failure to State a Claim

Finally, Defendant asserts that Plaintiff's Amended Complaint further fails to state a claim for disparate treatment or hostile work environment. Dkt. 25 at 17. The Court addresses the sufficiency of Plaintiff's disparate treatment and hostile work environment claims in turn.

### A. Disparate Treatment Claims

Turning first to Plaintiff's disparate treatment claims, eight of Plaintiff's counts allege that Plaintiff has suffered disparate treatment based on her age, sex, disability, race, and national origin in violation of Title VII, the ADEA, and the Rehabilitation Act. Dkt. 22 at 2–7. Defendant asserts that Plaintiff has failed to allege disparate treatment under any of these three statutes. Dkt. 25 at 18–22. The Court agrees.

### 1.  Title VII

Title VII prohibits employment discrimination based on race, color, national origin, religion, and sex. 42 U.S.C. § 2000e–2(a)(1). To state a claim for disparate treatment under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside her protected class. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

13

Relevant to Title VII, Plaintiff's Amended Complaint alleges disparate treatment based on her race, national origin, and sex. Dkt. 22 at 2−7. However, as Defendant correctly notes, nowhere in Plaintiff's Amended Complaint does Plaintiff identify a similarly situated individual of a different race, national origin, or sex who was treated more favorably than Plaintiff. *See generally* Dkt. 22. Simply alleging that she was treated differently because of her race, national origin, and sex is insufficient to state a disparate treatment claim under Title VII. *See Showers v. City of Bartow*, 978 F. Supp. 1464, 1468 (M.D. Fla. 1997). Additionally, Plaintiff fails to identify her national origin for purposes of alleging national origin discrimination. *See generally* Dkt. 22. These deficiencies are fatal to Plaintiff's Title VII disparate treatment claims.

To the extent that Plaintiff may be relying on past factual allegations contained in her initial complaint, that pleading was dismissed as a shotgun pleading. The Court will not sift through past pleadings in an attempt to save an amended complaint's insufficient claims. In any amended pleading, Plaintiff must plead every element of her claims.

### 2. Rehabilitation Act

The Rehabilitation Act prohibits discrimination against a qualified employee based on her disability. 29 U.S.C. § 29 U.S.C. 794(a). To state a disparate treatment claim under the Rehabilitation Act, a plaintiff must show that she: (1)

has a disability; (2) is otherwise qualified for the position; and (3) was subjected to unlawful discrimination as a result of her disability. *Palmer v. McDonald*, 624 F. App'x 699, 705 (11th Cir. 2015).

Concerning the first element, a person must establish that that she has a "disability" as defined by the Rehabilitation Act, which uses the Americans with Disabilities Act's ("ADA") definition of the term. *See* 27 U.S.C. § 705(9). Accordingly, a person has a disability for purposes of the Rehabilitation Act if she: (1) has a physical or mental impairment which substantially limits one or more of her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1).

Defendant asserts that Plaintiff's Amended Complaint fails to make any showing of disability under this definition. Indeed, Plaintiff simply refers to herself as a "cancer survivor." *See* Dkt. 22 at 2−7. This is insufficient. Plaintiff must demonstrate that her cancer is, or was, an impairment that substantially limited one or more of her major life activities. *See* 42 U.S.C. § 12102(1). Alternatively, Plaintiff may show that Defendant regarded her as having such a substantially limiting impairment. *See id.* With no factual allegations surrounding her status as a cancer survivor, Plaintiff has not satisfied the first element of a Rehabilitation Act disparate treatment claim.

As for the third element, a person must also prove that she suffered an

adverse employment action "solely by reason of" her disability. *Palmer*, 624 F. App'x at 705 (quoting 29 U.S.C. § 794(a)). In all eight counts asserting disparate treatment, Plaintiff alleges that she suffered adverse employment actions due to her race, national origin, sex, age, *and* disability. *See* Dkt 22 at 2−7. "It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on [her] disability[.]" *Palmer*, 624 F. App'x at 705. Because Plaintiff fails to demonstrate a "disability" that was the "sole" cause of an adverse employment action, each of her Rehabilitation Act disparate treatment claims must be dismissed.

### 3. ADEA

Turning to Plaintiff's ADEA disparate treatment claims, the ADEA prohibits an employer from discriminating against an employee over the age of forty because of that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). To state a disparate treatment claim under the ADEA, a plaintiff must allege that she was: (1) a member of a protected class; (2) subjected to an adverse employment action; (3) qualified to do the job; and (4) replaced by or otherwise lost a position to a younger individual. *Afrat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 875 (11th Cir. 2013) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000)).

Like a plaintiff's disability in the context of disparate treatment claims under

16

the Rehabilitation Act, a plaintiff's age must be the sole cause of an adverse
employment action for purposes of an ADEA disparate treatment claim. *Gross v.
FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). As already noted, Plaintiff's
disparate treatment claims allege discrimination based on race, national origin, sex,
age, and disability. Dkt. 22 at 2–7. Because Plaintiff has failed to allege any
adverse employment action that she suffered solely because of her age, her ADEA
disparate treatment claims fail.

Additionally, concerning the fourth element of an ADEA disparate treatment
claim, Plaintiff fails to allege that a younger individual was selected for the District
Director position that she sought. *See generally* Dkt. 22. Though Plaintiff provided
a few more details about individuals at her workplace in her initial complaint, the
Court again notes that it will not search through a previously dismissed complaint
to fill the gaps in Plaintiff's present claims. Plaintiff must expressly re-allege any
facts upon which she still relies. For these reasons, Plaintiff's ADEA disparate
treatment claims are due to be dismissed.

## B. Hostile Work Environment Claims

Finally, the Court turns to the sufficiency of Plaintiff's hostile work
environment claims. To state a hostile work environment claim under Title VII, the
ADEA, or the Rehabilitation Act, a plaintiff must show: "(1) [s]he belongs to a
protected group; (2) [s]he was subjected to unwelcome harassment; (3) the

harassment was based on h[er] membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." *Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019) (quoting *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010)); *see also Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 771 (11th Cir. 2017).

In Counts 1 through 4 and 6 through 9, Plaintiff asserts "a hostile work environment" based on race, national origin, sex, age, and disability discrimination in violation of Title VII, the ADEA, and the Rehabilitation Act. Dkt. 22 at 2−7. By pleading in this fashion, Plaintiff has essentially "taken [her] . . . discrimination claim[s] and alleged in an utterly conclusory fashion that this discrimination created a hostile work environment." *See Nurse*, 775 F. App'x at 607. This she cannot do. Disparate treatment and hostile work environment claims are entirely different legal theories. In any event, the Court has already determined that Plaintiff has not stated any claim for disparate treatment under Title VII, the ADEA, or the Rehabilitation Act. Without any other factual allegations, Plaintiff fails to plead hostile work environment claims in Counts 1 through 4 and 6 through 9.

Plaintiff's remaining hostile work environment claim in Count 5 likewise

fails. The hostile work environment claim alleged in Count 5 is based on the allegedly retaliatory conduct of Plaintiff's supervisor during an April 2021 meeting. Dkt. 22 at 4−5. However, "a single incident of harassing conduct cannot support a hostile work environment claim." *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 397 (11th Cir. 2012). The "very nature" of hostile work environment claims "involves repeated conduct." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115. In other words, a hostile work environment claim is "based on the *cumulative effect* of individual acts." *Id.* (emphasis added).

Count 5 is not Plaintiff's only hostile work environment claim that suffers from this defect. All of Plaintiff's hostile work environment claims appear to be based on single incidents. *See* Dkt. 22 at 2−7. Had Plaintiff brought only three hostile work environment claims—one under Title VII, one under the ADEA, and one under the Rehabilitation Act—based on the cumulative effect of the incidents she alleges, she would have avoided this specific flaw. But because none of Plaintiff's hostile work environment claims are based on the cumulative effect of repeated conduct, they necessarily fail.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss (Dkt. 25) is **GRANTED**. Plaintiff's Amended Complaint (Dkt. 22) is **DISMISSED WITHOUT PREJUDICE**. The Court will afford Plaintiff one final chance to

sufficiently plead her case by remedying the defects identified throughout this Order. If she so chooses, Plaintiff may file a second amended complaint on or before **May 15, 2023.**[2]

  **DONE AND ORDERED** at Tampa, Florida, on April 24, 2023.

       */s/ William F. Jung*    
       **WILLIAM F. JUNG**
       **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Plaintiff, *pro se*
Counsel of Record

---

[2] Plaintiff is encouraged to consult the "Guide for Proceeding Without a Lawyer" available on the Middle District of Florida's website. The guide provides useful information and resources for *pro se* litigants.